UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN THE MATTER OF THE COMPLAINT

|  |  |
|---|---|
| of | **07 CV 3840 (RWS)** |
|  | **NOTICE OF** |
| DONJON MARINE CO., INC., as | **CROSS-MOTION** |
| Owner of Tug WILLIAM E. for | **WITH OPPOSITION** |
| Exoneration from or Limitation of | **TO PETITIONER'S** |
| Liability, | **SUMMARY JUDGMENT** |
| Petitioner. | **MOTION** |

-------------------------------------------------------------x
TO:  DONJON MARINE CO., INC.:

PLEASE TAKE NOTICE that upon the attached Affidavit of DENNIS KIRBY, sworn to on the 2nd day of January, 2008, the Affidavit of MARK H. EDWARDS, ESQ., affirmed the 3rd day of January, 2008, the exhibits annexed thereto and upon all prior pleadings and proceedings had heretofore herein, and upon the accompanying Memorandum of Law, DENNIS KIRBY will move this Court before HONORABLE DISTRICT JUDGE ROBERT W. SWEET, United States Courthouse, 500 Pearl Street, New York, New York 10007, on the 30th day of January, 2008 at 12:00 o'clock, for an order pursuant to Rule 15 granting DENNIS KIRBY leave to serve amended pleadings, and for such other and further relief as this Court deems just and proper and in the interests of justice.

Dated:  New York, New York
        January 3, 2008

Mark H. Edwards (ME-7106)
GORAYEB & ASSOCIATES, P.C.
Attorney for Respondent/Claimant
DENNIS KIRBY
100 William Street, Suite 1205
New York, New York 10038
Tel. (212) 267-9222
Fax (212) 962-5418
File No. 7104

TO: RUBIN, FIORELLA & FRIEDMAN, LLP
    Attorneys for DONJON MARINE CO., INC.
    292 Madison Avenue
    New York, New York 10017
     (212) 953-2381
    File No:  609-8731

Mark H. Edwards (ME 7106)
GORAYEB & ASSOCIATES, P.C.
100 William Street, Suite 1205
New York, New York 10038
(212) 267-9222
Attorney for Respondent/Claimant
DENNIS KIRBY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN THE MATTER OF THE COMPLAINT          07 civ 3840 (RWS)

        of                                      **AFFIDAVIT OF
                                                MARK H. EDWARDS**

DONJON MARINE CO., INC., as
Owner of Tug WILLIAM E. for
Exoneration from or Limitation of
Liability,

                Petitioner.
-----------------------------------------------------------x
COUNTY OF NEW YORK)
               )ss.:
STATE OF NEW YORK  )

      **MARK H. EDWARDS,** being duly sworn, deposes and says as follows:

      1.    I am associated with Gorayeb & Associates, P.C., attorney for Dennis

Kirby, respondent/claimant in this action as well as the plaintiff in the related lawsuit [07-

3742 (RWS)(DFE)]. I am familiar with the facts of this matter based upon personal

knowledge and/or review of the file.

      2.    This Affidavit and the annexed Affidavit of Dennis Kirby, duly sworn to on

January 2, 2008, are submitted in opposition to the motion of Donjon Marine Co., Inc.

(hereinafter, "Donjon") and in support of the cross-motion to serve amended pleadings

for the purpose of formally specifically claiming a violation of 33 U.S.C. 905(b) and 33

U.S.C. 933 in support of Mr. Kirby's federal negligence claims against Donjon.

3.    The following exhibits are submitted in opposition to Donjon's summary judgment motion:

**EXHIBIT A** – Documentary Discovery Demands Of Respondent Dennis Kirby, dated September 26, 2007;

**EXHIBIT B** – Donjon Marine Co., Inc.'s Responses To Documentary Discovery Demands, dated November 26, 2007;

**EXHIBIT C** – Notice of Deposition, dated November 19, 2007;

**EXHIBIT D** – Certified Local Climatological Data for January 2007;

**EXHIBIT E** – Response To Rule 56.1 Statement of Undisputed Material Facts;

**EXHIBIT F** – Proposed Amended Pleadings.

4.    A Memorandum of Law is also being submitted in opposition to Donjon's summary judgment motion and in support of Dennis Kirby's cross-motion.

**WHEREFORE,** it is respectfully requested that Petitioner's summary judgment motion be denied and that the Court grant Dennis Kirby's cross-motion to serve amended pleadings and grant him such other and further relief as the Court deems just and proper and in the interests of justice.

Mark H. Edwards

Sworn to before me this
3rd day of January, 2008

Notary Public

CHRISTOPHER J. CONROY
NOTARY PUBLIC, State of New York
No. 31-4958559
Qualified in New York County
Commission Expires Nov. 6, 19 2009

## AFFIDAVIT OF DENNIS KIRBY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
IN THE MATTER OF THE COMPLAINT          07 civ 3840 (RWS)

        of                                   AFFIDAVIT OF
                                        DENNIS KIRBY
DONJON MARINE CO., INC., as
Owner of Tug WILLIAM E. for
Exoneration from or Limitation of
Liability,

             Petitioner.
---------------------------------------------------------x

COUNTY OF NEW YORK)
              )ss.:
STATE OF NEW YORK  )

      DENNIS KIRBY, being duly sworn, deposes and says as follows:

      1.     My date of birth is July 23, 1952 and I was born in Brooklyn, NY. I currently live at 868 East 156th Street, Apartment 1, Bronx, New York 10455. I am approximately 5-feet-8-inches tall and weigh 135-pounds. I weighed the same amount at the time of my accident.

      2.     I was seriously injured on the morning of January 31, 2007, at approximately 9:45 a.m., when I was caused to fall from an aluminum, 12-foot-high, A-frame, step-ladder while sandblasting the hull of a tugboat that I believe was named "William E." I was employed by Caddell Dry Dock and Repair Co., Inc. ("Caddell"). The tugboat was in Caddell's dry dock #3, in Staten Island, NY.

3. At the time of my accident, I was a painter and my job duties included sandblasting and painting. I had started working for Caddell in approximately May of 2006, when the weather was warm. I had never sandblasted before becoming an employee of Caddell. On the day of my accident, it was winter time and it was at or below freezing cold and windy. I was wearing a jumpsuit with work clothes underneath, boots, gloves and a hard hat with a shield over my face.

4. I was told by Elliott Pressley, a senior Caddell painter, to get the ladder and start sandblasting the boat. The ladder was a Caddell ladder. The sandblasting hose that I was using was connected to a blasting pot that had course, grainy, black material, like sand and was powered by compressed air. Another co-worker, named Armando, was told to sandblast the other side of the boat on another A-frame ladder and we started doing that work. I believe that we had set up the blasting pot and hoses the day before my accident.

5. I had previously been taught by Jim Mullusky, the painting supervisor, that when sandblasting on an A-frame ladder, I should work with my back toward the steps. I was doing that at the time of my accident. I was standing with both feet on approximately the 7th step of the ladder when my accident occurred. While standing on the ladder, my feet were approximately 7-feet above the floor of the dry dock. The ladder was spread out in an open position and the braces between the front and back rails were locked down.

6.    Because I was not facing the ladder and had to hold onto the sandblasting hose with two hands, I placed my feet at the ends of the step, against the rails, and part of my back was touching the steps behind me for support. Because the sandblasting hose exerted a force against me and because I did not want the sandblasting material to bounce back at me, I worked at an angle, to my left, approximately 6-feet away from the boat, holding the hose with both hands, which I was also taught to do. I got on and off the ladder two or three times before the accident and moved it to the left, along the side of the boat, as I sandblasted from one area to the next.

7.    Nobody was holding the ladder while I was working on it. The ladder was not secured against movement by any ropes. I was not provided with anything to secure the ladder against movement, even though it was very windy that day. I was not given a safety harness or a lifeline to prevent or break a fall. There was no scaffolding set up and I was not provided with a scaffold even though it would have provided a more stable work platform. At Caddell, the painters were not usually provided scaffolding to work on unless it had already been set up for welders, or other workers.

8.    That morning, before my accident, while I was sandblasting on the ladder, I saw two or three Caucasian men, individually, and at different times, walking in the dry dock, below me, inspecting the sandblasting work that was being done. They were not Caddell employees and it was my understanding and belief that they worked for the tugboat. When they would approach me, I would

stop sandblasting so that they could pass by without getting hit with the sandblasting material.

9.     That morning and at the time of the accident it was very windy. When my accident occurred, the wind was gusting heavily toward my right as I sandblasted the boat. I was aiming the hose at the boat, at an angle, to the left. The combination of the strong wind blowing against me and the ladder and the backward force of the sandblasting hose caused the ladder to tip over to the right. The left side legs of the ladder lifted off of the floor of the dry dock and caused me to fall to the right, with the ladder.

10.    Because of the movement and collapse of the ladder, I was caused to fall to the floor of the dry dock with the ladder, which was a distance of approximately 7-feet. I suffered serious physical injuries and other injuries and damages. I was taken by ambulance and admitted to St. Vincent's Medical Center in Staten Island for approximately four days. I fractured my right arm and my right scapula and suffered other injuries including but not limited to a lacerated forehead that required approximately 11 stitches. I had surgery on my wrist and still have a metal plate and screws in my right arm.

11.    I was not provided with proper, reasonable and adequate safety protection and safety devices at the time of my accident and the lack of proper safety protection and safety devices caused my accident and injuries. The ladder that I was given was an inadequate safety device for the job and it failed to provide me proper protection. If I had been provided with a ladder that was properly

secured against movement, or a safety harness and lifeline, or a stable scaffold, to prevent or break a fall, my accident would not have occurred and I would not have been injured. I now know that I was not provided with a reasonably safe place to work.

12.     The men from the tugboat observed the unreasonable and unsafe conditions under which I was required to perform my work and should have taken proper action to ensure my safety since Caddell failed to do so. I do not believe that a proper safety plan was in effect to provide proper fall protection and the owner and employees of the tugboat should have made certain that proper, reasonable and adequate safety devices, precautions and protection were provided to me at the time of my accident while I performed worked on their tugboat.

DENNIS KIRBY

Sworn to before me this
2nd day of January, 2008

Notary Public

SHANIK RODRIGUEZ
Commissioner of Deeds
City of New York - No. 3-7219
Certificate Filed in New York County
Commission Expires August 1, 2008

# EXHIBIT A

Mark H. Edwards (ME 7106)
GORAYEB & ASSOCIATES, P.C.
Attorney for Respondent
DENNIS KIRBY
100 William Street, Suite 1205
New York, New York 10038
(212) 267-9222

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

IN THE MATTER OF THE COMPLAINT

**07 CV 3840 (RWS)(DFE)**

of

**DOCUMENTARY DISCOVERY
DEMANDS OF RESPONDENT
DENNIS KIRBY**

DONJON MARINE CO., INC. as
owner of Tug WILLIAM E. for
Exoneration from or Limitation of
Liability,

Petitioner.

-------------------------------------------------------------x

Respondent, DENNIS KIRBY (hereinafter, also referred to as "respondent"),

by his attorney, Gorayeb & Associates, P.C., requests that petitioner produce and

permit respondent's Counsel to inspect and copy the following documents and

photographs that are in the possession, custody or control of petitioner within 30

days after service of the within request, as required by Rule 34 of the Federal

Rules of Civil Procedure:

1.      Each and every written agreement, purchase order and work order

between DONJON MARINE CO., INC. and respondent's employer for the

sandblasting, painting and repair work to the Tug WILLIAM E. that was in effect at

the time of respondent's accident (1/31/07).

2.      Each and every document that shows the name of each and every agent, servant, employee and corporate officer of DONJON MARINE CO., INC. who was present at the dry dock at any time while welding and/or sandblasting and/or painting work was being done on the Tug WILLIAM E. while the Tug WILLIAM E. was in dry dock at Caddell Dry Dock And Repair Co., Inc. prior to and including the date of respondent's accident.

3.      Certificate of insurance and insurance policy for hull insurance on the Tug WILLIAM E. that was in effect on date of respondent's accident.

4.      Valuations, appraisals and statements of value of Tug WILLIAM E. made by DONJON MARINE CO., INC. and each and every person and entity on its behalf for the 2-year period prior to respondent's date of accident (1/31/07).

5.      Bill of sale for the purchase of the Tug WILLIAM E. by DONJON MARINE CO., INC.

6.      Photographs of the Tug WILLIAM E. taken in the 1-year period prior to and including respondent's accident.

7.      The Ship's Log for the Tug William E. while it was in dry dock at Caddell Dry Dock And Repair Co., Inc.

8.      The Garbage Log for the Tug William E. while it was in dry dock at Caddell Dry Dock And Repair Co., Inc.

9.      Engineer's Log for the Tug William E. while it was in dry dock at Caddell Dry Dock And Repair Co., Inc.

10.     Certificate of Inspection last issued by the United States Coast Guard for the Tug WILLIAM E. that was issued prior to January 31, 2007.

11. Accident and incident reports prepared by employees, servants and agents of DonJon Marine Co., Inc. regarding respondent's accident.

12. Written company safety policy of DonJon Marine Co., Inc. pertaining to repair work being done on vessels in dry dock that was in effect on the date of respondent's accident.

13. Rules and regulations issued by DonJon Marine Co., Inc. that applied to the work being done at dry dock on the WILLIAM E. while at Caddell Dry Dock And Repair Co., Inc.

14. Rules and regulations issued by Caddell Dry Dock And Repair Co., Inc. and provided to DonJon Marine Co., Inc. that applied to DonJon Marine Co., Inc. employees and to the work being done at dry dock on the WILLIAM E. while at Caddell Dry Dock And Repair Co., Inc.

15. Names, job titles and addresses (if no longer employed) of each and every employee of DonJon Marine Co., Inc. who was present at dry dock at Caddell Dry Dock And Repair Co. Inc. while the Tug WILLIAM E. had worked performed upon it prior to and including January 31, 2007.

16. Photographs taken on the date of respondent's accident depicting Dry Dock #3 and the Tug WILLIAM E.

17. Log entries and memoranda prepared by DonJon Marine Co., Inc. regarding repair work being performed on the Tug William E. at Caddell Dry Dock And Repair Co. Inc. prior to and including respondent's accident.

18. Copies of written statements of Caddell Dry Dock And Repair Co.

Law Offices
BORAYEB & ASSOCIATES, P.C.
100 WILLIAM STREET
NEW YORK, NEW YORK 10038

Inc. employees regarding respondent's accident.

19.    Correspondence between DonJon Marine Co., Inc. and Caddell Dry Dock And Repair Co. Inc. that was sent within the period 4 months before and 3 months after respondent's accident, regarding repair work that was to be performed and was performed on the Tug William E. at Caddell Dry Dock And Repair Co. Inc..

20.    Any entries made in a DonJon Marine Co., Inc. log book regarding respondent's accident, at any time after it occurred.

Dated:  New York, NY
        September 26, 2006

Respectfully submitted, by,

Mark H. Edwards (ME 7106)
GORAYEB & ASSOCIATES, P.C.
Attorney for DENNIS KIRBY
100 William Street, Suite 1205
New York, New York 10038
(212) 267-9222
File No. 7401-LL/MU

TO:  RUBIN, FIORELLA & FRIEDMAN LLP
     Attorney for DONJON MARINE CO., INC.
     292 Madison Avenue
     New York, New York 10017
     (212) 953-2381
     File No. 609-8731

STATE OF NEW YORK

SS.:  **AFFIDAVIT OF SERVICE**

COUNTY OF NEW YORK

    I, Maria Urgiles, being duly sworn, depose and say: I am not a party to the action, am over 18 years of age, and reside in the County of Queens, State of New York.

    On September 26, 2007, I served the within **DOCUMENTARY DISCOVERY DEMANDS OF RESPONDENT DENNIS KIRBY** to the Federal Express office location at 100 William Street, New York, New York, for overnight delivery service on the following attorneys:

        RUBIN, FIORELLA & FRIEDMAN, LLP
        . 292 Madison Avenue
        New York, New York 10017

                    Maria Urgiles

Sworn to before me on
September 26, 2007

Notary Public

VIJAY ZAMAN
Notary Public, State of New York
No. 4996224
Qualified in Kings County
Commission Expires May 11, 2070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE COMPLAINT                    **07 CV 3840 (RWS)(DFE)**

of

DONJON MARINE CO., INC. as
owner of Tug WILLIAM E. for
Exoneration from or Limitation of
Liability,

Petitioner.

## DOCUMENTARY DISCOVERY DEMANDS OF RESPONDENT DENNIS KIRBY

### GORAYEB & ASSOCIATES, P.C.
Attorneys for DENNIS KIRBY
100 William Street, Ste. 1205
New York, New York 10038
(212) 267-9222
FILE NO. 7401 - LL

EXHIBIT B

James E. Mercante (JM 4231)
Michael E. Stern (MS 9113)
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue
New York, NY 10017
(212) 953-2381
Attorneys for Petitioner
DONJON MARINE CO., INC.
As owner of Tug WILLIAM E.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
IN THE MATTER OF THE COMPLAINT

    of

DONJON MARINE CO., INC. as owner of Tug
WILLIAM E. for Exoneration from or Limitation
of Liability,

      Petitioner.

07 civ 3840

**DONJON MARINE CO., INC.'S
RESPONSES TO
DOCUMENTARY DISCOVERY
DEMANDS**

SIRS:

 **PLEASE TAKE NOTICE** that Petitioner DONJON MARINE CO., INC., by its attorneys

RUBIN, FIORELLA & FRIEDMAN, LLP responds to claimant Dennis Kirby's Demand for

Documents as follows:

1. Each and every written agreement, purchase order and work order between DONJON

  MARINE CO., INC. and respondent's employer for the sandblasting, painting and repair

  work to the TUG WILLIAM E. that was in effect at the time of respondent's accident

  (1/31/07).

  <u>**Response to Demand 1**</u>:

  Caddell Dry Dock Work Order attached hereto.

2.      Each and every document that shows the name of each and every agent, servant, employee

and corporate officer of DONJON MARINE CO., INC. who was present at the dry dock at

any time while welding and/or sandblasting and/or painting work was being done on the Tug

WILLIAM E. while the Tug WILLIAM E. was in dry dock at Caddell Dry Dock and Repair

Co., Inc. prior to and including the date of respondent's accident.

**Response to Demand 2:**

Donjon objects to this Demand on the ground it is overly broad, ambiguous and not likely

to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection,

documents produced herewith.

3.      Certificate of insurance and insurance policy for hull insurance on the Tug WILLIAM E. that

was in effect on date of respondent's accident.

**Response to Demand 3:**

Documents attached hereto.

4.      Valuations, appraisals and statements of value of Tug WILLIAM E. made by DONJON

MARINE CO., INC. and each and every person and entity on its behalf for the 2-year period

prior to respondent's date of accident (1/31/07).

**Response to Demand 4:**

Donjon objects to this Demand on the ground it is overly broad, ambiguous and not likely

to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection,

Report of Thomas O. Mowbray Marine Sales dated May 15, 2007 is annexed to the Verified

Complaint.

5.      Bill of sale for the purchase of the Tug WILLIAM E. by DONJON MARINE CO., INC.

**Response to Demand 5:**

Coast Guard Bill of Sale dated 12-14-2004 attached hereto.

6.    Photographs of the Tug WILLIAM E. taken in the 1-year period prior to and including respondent's accident.

**Response to Demand 6:**

Donjon objects to this Demand on the ground it is overly broad and ambiguous and is not likely to lead to the discovery of admissible evidence.

7.    The Ship's Log for the Tug WILLIAM E. while it was in dry dock at Caddell Dry Dock and Repair Co., Inc.

**Response to Demand 7:**

Wheelhouse Log attached hereto.

8.    The Garbage Log for the Tug WILLIAM E. while it was in dry dock at Caddell Dry Dock and Repair Co., Inc.

**Response to Demand 8:**

Donjon does not have documents responsive to this Demand.

9.    Engineer's Log for the Tug WILLIAM E. while it was in dry dock at Caddell Dry Dock and Repair Co., Inc.

**Response to Demand 9:**

Engineer's Log attached hereto.

10.   Certificate of Inspection last issued by the United States Coast Guard for the Tug WILLIAM E. that was issued prior to January 31, 2007.

**Response to Demand 10:**

Donjon does not have documents responsive to this Demand.

11.   Accident and incident reports prepared by employees, servants and agents of DonJon Marine Co., Inc. regarding respondent's accident.

**Response to Demand 11:**

Donjon does not have documents responsive to this Demand.

12.   Written company safety policy of DONJON MARINE CO., INC. pertaining to repair work being done on vessels in dry dock that was in effect on the date of respondent's accident.

**Response to Demand 12:**

Donjon objects to this Demand on the ground it is overly broad and ambiguous and is not likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, Donjon does not have documents responsive to this Demand.

13.   Rules and regulations issued by Donjon Marine Co., Inc. that applied to the work being done at dry dock on the WILLIAM E. while at Caddell Dry Dock and Repair Co., Inc.

**Response to Demand 13:**

Donjon objects to this Demand on the ground it is overly broad and ambiguous and is not likely to lead to the discovery of admissible evidence. Notwithstanding the foregoing objection, Donjon does not have documents responsive to this Demand.

14.   Rules and regulations issued by Caddell Dry Dock and Repair Co., Inc. and provided to DonJon Marine Co., Inc. that applied to DonJon Marine Co., Inc. employees and to the work being done at dry dock on the WILLIAM E. while it was in dry dock at Caddell Dry Dock and Repair Co., Inc.

**Response to Demand 14:**

Donjon does not have documents responsive to this Demand.

15.   Names, job titles and addresses (if no longer employed) of each and every employee of

Page 4 of 6

Donjon Marine Co., Inc. who was present at dry dock at Caddell Dry Dock and Repair Co., Inc. while the Tug WILLIAM E. had worked performed upon it prior to and including January 31, 2007.

**Response to Demand 15:**

Donjon does not have documents responsive to this Demand.

16.    Photographs taken on the date of respondent's accident depicting Dry Dock #3 and the Tug WILLIAM E.

**Response to Demand 16:**

Donjon does not have documents responsive to this Demand.

17.    Log entries and memoranda prepared by DonJon Marine Co., Inc. regarding repair work being performed on the Tug WILLIAM E. at Caddell Dry Dock and Repair Co., Inc. prior to and including respondent's accident.

**Response to Demand 17:**

Responses to Demands Nos. 7 and 9.

18.    Copies of written statements of Caddell Dry Dock and Repair Co., Inc. employees regarding respondent's accident.

**Response to Demand 18:**

Documents attached hereto.

19.    Correspondence between Donjon Marine Co., Inc. and Caddell Dry Dock and Repair Co., Inc. that was sent within the period 4 months before and 3 months after respondent's accident, regarding repair work that was to be performed and was performed on the Tug WILLIAM E. at Caddell Dry Dock and Repair Co., Inc.

20.

**Response to Demand 19:**

Donjon objects to this Demand on the ground it is overly broad and ambiguous and is not likely to lead to the discovery of admissible evidence.

21.   Any entries made in Donjon Marine Co., Inc. log book regarding respondent's accident, at any time after it occurred.

**Response to Demand 20:**

Donjon does not have documents responsive to this Demand.

Dated: November 26, 2007

RUBIN, FIORELLA & FRIEDMAN LLP
Attorneys for Petitioner
DONJON MARINE CO., INC.

By: _____
      James E. Mercante (JM 4231)
      Michael E. Stern (MS 9113)
   292 Madison Avenue, 11th Floor
   New York, New York  10017
   212 953-2381
   Our File No. 609-8731

# CADDELL DRY DOCK AND REPAIR CO., INC.
## Foot of Broadway and Richmond Terrace
## P.O. Box 327
## Staten Island, New York 10310

## Accident Report

**Employee:** Dennis Kirby
**Title:** Painter/Blaster
**DOB:** 7/23/1952
**DOH:** 5/2/2006

**DOA:** 01/31/2007 @ 9:45 am

**Location:** Caddell Dry Dock and Repair Company
Richmond Terrace and Broadway
Dry Dock 3

**Job Assignment:** Mr. Kirby was assigned to sand blast Don Jon Marine tug boat
"William E", located on Dry Dock 3

**Witnesses:** None

**Reported to:** James Mullusky, Painters' Supervisor and Elliot Pressley, Painter

**Description:** Mr. Kirby was sandblasting (i.e., starboard side of vessel) from halfway-up a 12 foot A-frame ladder (i.e. from approximately 6 -7 feet) while Mr. Elliot Pressley watched the "blasting pot" a few feet away from him. Mr. Mullusky stopped by to check the work area and to make sure the proper safety procedures were in place. Mr. Kirby was using the ladder correctly with his back toward the ladder. Mr. Mullesky left and approximately five minutes later, Mr. Kirby fell off the ladder pulling the ladder down with him. Mr. Pressley did not see the accident happening, but went immediately to Mr. Kirby's help. Mr. Kirby remained on the floor until the ambulance and paramedics arrived at the site. He was always conscious, but had a cut on the forehead and his right hand seemed injured. He was driven by ambulance to St. Vincent Medical Center on Bard Street, Staten Island, NY.

**Report prepared by:** Myrsa Dapolito                    1/31/2007
Director, Human Resources
718-442-2112

DHS, USCG CG 1270 (REV. 06-04)

OMB APPROVED 1625-0027



# UNITED STATES OF AMERICA

### DEPARTMENT OF HOMELAND SECURITY
### UNITED STATES COAST GUARD

## NATIONAL VESSEL DOCUMENTATION CENTER

# CERTIFICATE OF DOCUMENTATION

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| WILLIAM E. | 284306 | 5224053 | 1952 |

| HAILING PORT | HULL MATERIAL | | MECHANICAL PROPULSION |
|---|---|---|---|
| NEW YORK, NY | STEEL | | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 144 GRT | 98 NRT | 84.8 | 24.0 | 9.6 |

| PLACE BUILT |
|---|
| OYSTER BAY, NY |

| OWNERS | OPERATIONAL ENDORSEMENTS |
|---|---|
| DONJON MARINE CO., INC | COASTWISE |

**MANAGING OWNER**
DONJON MARINE CO., INC
1250 LIBERTY AVENUE
HILLSIDE, NJ 07205

**RESTRICTIONS**
NONE

**ENTITLEMENTS**
NONE

**REMARKS**
NONE

**ISSUE DATE**
JUNE 19, 2007

**THIS CERTIFICATE EXPIRES**
JULY 31, 2008

VDS

DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

Document Type: BILL_OF_SALE
Batch Number: 371699
Document ID: 3714738
User ID: SCANNER4
Filed Date/Time: 18-MAY-2005 10:55 AM

909 363 2710    P.02

THIS SECTION FOR COAST GUARD USE ONLY

| 1. VESSEL NAME | 2. OFFICIAL NUMBER OR HULL ID NUMBER | |
|---|---|---|
| Marie J. | 264306 | |

3. NAMES AND ADDRESSES OF SELLERS

R. J. Casho Marine Towing
418 Biddle Street
Chesapeake City, MD 21915

RECORDED:

BOOK:              PAGE:

PORT (IF NOT FILING PORT)

DOCUMENTATION OFFICER

3A. TOTAL INTEREST OWNED (IF LESS THAN 100%) _____ %.

4. NAMES AND ADDRESSES OF BUYER(S) AND INTEREST TRANSFERRED TO EACH

Donjon Marine Co., Inc.
1240 Liberty Avenue
Hillside, New Jersey 07205

4A. TOTAL INTEREST TRANSFERRED (100% UNLESS OTHERWISE SPECIFIED)   100   %

4B. MANNER OF OWNERSHIP. UNLESS OTHERWISE STATED HEREIN, THIS BILL OF SALE CREATES A TENANCY IN COMMON, WITH EACH TENANT OWNER AN EQUAL UNDIVIDED INTEREST. CHECK ONLY ONE OF THE FOLLOWING BLOCKS TO SHOW ANOTHER FORM OF OWNERSHIP.

☐ JOINT TENANCY WITH RIGHT OF SURVIVORSHIP     ☐ TENANCY BY THE ENTIRETIES     ☐ COMMUNITY PROPERTY

☐ OTHER (DESCRIBE)

5. CONSIDERATION RECEIVED:

(ONE DOLLAR AND OTHER VALUABLE CONSIDERATION UNLESS OTHERWISE STATED)

6. I (WE) DO HEREBY SELL TO THE BUYER(S) NAMED ABOVE, THE RIGHT, TITLE AND INTEREST IDENTIFIED IN BLOCK 4 OF THIS BILL OF SALE, IN THE PROPORTION SPECIFIED HEREIN.

VESSEL IS SOLD FREE AND CLEAR OF ALL LIENS, MORTGAGES, AND OTHER ENCUMBRANCES OF ANY KIND AND NATURE, EXCEPT AS STATED ON THE REVERSE HEREOF. VESSEL IS SOLD TOGETHER WITH AN EQUAL INTEREST IN THE MASTS, BOWSPRIT, SAILS, BOATS, ANCHORS, CABLES, TACKLE, FURNITURE AND ALL OTHER NECESSARIES THERETO APPERTAINING AND BELONGING, EXCEPT AS STATED ON THE REVERSE HEREOF.

| 7. SIGNATURE(S) OF SELLER(S) OR PERSON(S) SIGNING ON BEHALF OF SELLER(S). | 8. DATE SIGNED |
|---|---|
| Robert J. Casho  *Robert J. Casho* | 12/14/04 |

9. NAME(S) OF PERSON(S) SIGNING ABOVE, AND LEGAL CAPACITY IN WHICH SIGNED (E.G., OWNER, AGENT, TRUSTEE, EXECUTOR)

*Robert J. Casho*    owner

10. ACKNOWLEDGMENT (TO BE COMPLETED BY NOTARY PUBLIC OR OTHER OFFICIAL AUTHORIZED BY A LAW OF A STATE OR THE UNITED STATES TO TAKE OATHS.)

ON 12.14.2004 THE PERSON(S) NAMED IN SECTION 9     STATE Maryland

ABOVE ACKNOWLEDGED EXECUTION OF THE FOREGOING INSTRUMENT IN THEIR STATED CAPACITY(IES) FOR THE PURPOSE THEREIN CONTAINED.     COUNTY Cecil

NOTARY PUBLIC

MY COMMISSION EXPIRES: 7-01-200_

TOTAL P.02

MAY 1 4 2007         PAGE  1  OF  3 

DATE   MARCH 29, 2007 .        BILL NO.   14608

VESSEL          " WILLIAM E " & OWNERS

CADDELL W.O# 070132

# CADDELL DRY DOCK AND REPAIR CO., INC., DR.

### DRY DOCKS & SHIPYARD

718 442-2112
FAX: 718-981-7493
FOOT OF BROADWAY • P.O. BOX 327 • STATEN ISLAND, N.Y. 10310

NET 10 DAYS 1% PER MONTH SERVICE CHARGE AFTER 10 DAYS.

DONJON MARINE CO, INC
1250 LIBERTY AVENUE
HILLSIDE , NEW JERSEY 07205

1/25/07 - 2/14/07

**1.) DRY-DOCKING:-**
DRY-DOCKED VESSEL, DD# 3, 1/15/07 FOR EXAMINATION, PAINTING AND TO PERFORM NECESSARY UNDERWATER REPAIRS. PROVIDED THE SERVICES OF MOTOR BOAT AND LINE HANDLERS DURING DRY-DOCKING AND UN-DOCKING OF VESSEL.         # ($ 30,695.00)

**2.) SHORE POWER:-**
PROVIDED CABLE, CONNECTED AND FURNISHED 208/120 VOLT A/C SHORE POWER TO VESSEL. AFTER COMPLETING REPAIRS DISCONNECTED AND REMOVED.         # ($ 8, 165.00)

**3.) SAND SWEEP / SPOT BLAST AND PAINT HULL:-**
FURNISHED LABOR, MATERIAL, EQUIPMENT. MADE NECESSARY PRTOTECTION COVERING ON ALL EXPOSED EQUIPMENT ON DECK. SAND SWEPT AND SPOT BLASTED VESSEL'S BOTTOM, SIDES AND ENDS FROM KEEL TO MAIN DECK. BLEW AND REMOVED ALL REMAIN GRIT FROM HULL. APPLIED O/F PAINT AS FOLLOWS:-
ONE (1) FULL COAT OF 235 RED FROM KEEL TO MAIN DECK.
ONE (1) FULL COAT OF 235 BLACK FROM KEEL TO MAIN DECK.
CUT IN WATER LINE AND PAINTED IN ALL MARKINGS ON HULL AS ORIGINAL.
TOUCHED UP ALL DISTURBED AREAS WHERE NECESSARY.
CLEANED DRY DOCK AND REOVED ALL GRIT FOR PROPER DISPOSAL.         # ($ 14,500.22)

**4.) CLEAN AND GAS FREE ENGINE ROOM BILGE:-**
SET UP VACUUM SLOP OIL TRUCK, HOSES ---ETC. PUMPED OUT EXISTING SLOPS AND WATER IN WAY OF ENGINE ROOM BILGE. CLEANED BILGES USING DEGREASER, WASHED, AND GAS FREED AS DIRECTED. OBTAINED GAS FREE MARINE CHEMIST CERTIFICATE. PUMPED OUT, REMOVED SLOP OIL TRUCK AND PROPERLY DISPOSED SLOPS.APPROX.1500.GAL. PROVIDED THE SERVICES OF A COMPETENT PERSON TO CHECK SPACES DAILY AND UPDATED GAS FREE CERTIFICATE FOR THE DURATION OF THE REPAIRS.
        # ($ 8,150.00)

**5.) MAIN RUDDER RENEWAL:-**
FURNISHED LABOR, MATERIAL, EQUIPMENT. SET UP MATERIAL, ERECTED NECESSARY STAGING, AND FITTED OVER HEAD PAD EYES TO HULL AND TO RUDDER FOR LIFTING RUDDER. MADE NECESSARY DISCONNECTION TO STEERING SYSTEM. REMOVED RUDDER STOCK PACKING. RAISED RUDDER, UNSHIPPED AND LOWERED RUDDER TO DRY DOCK. RIGGED, REMOVED AND TRANSFERRED TO SHOP FOR RENEWAL. SET UP MATERIAL 6" DIA ABS GRADE # 2 SHAFTING APPROX. 14 FT. RIGGED INTO MACHINE SHOP. SET IN LATHE. CLEANED UP AND TOOK NECESSARY MIC READINGS AGAINST OLD RUDDER STOCK. SET UP, FABRICATED AND MACHINED NEW RUDDER STOCK AS PER SAMPLE. SET UP MATERIAL, FABRICATED AND MACHINED NEW CARRIER PLATE FOR NEW RUDDER STOCK. SIZE: 14"X14" X 2" PLATE. SET UP MATERIAL, FABRICATED AND MACHINED NEW SELLEVE FOR RUDDER STOCK. SIZE: 61/2" I.D X 8" O.D X S/S TUBING. INSTALLED AND MADE UP. SET UP AND MILLED SQUARE IN TOP OF NEW RUDDER STOCK. SET UP AND MACHINED O.D OF RUDDER STOCK IWO UPPER BUSHING AS NEEDED. SET UP AND APPLIED FIBERGLASS UNDER BUSHING ON NEW RUDDER STOCK. SET UP MATERIAL, FABRICATED AND MACHINED NEW SLLEVE FOR GUDGEON PINTLE PIN. SIZE: 5" O.D X 4" ID X 5" S/S TUBING. INSTALLED AND SECURED. SET UP AND JACKED OUT EXISTING WORN PINTLE BEARING FOR RUDDER SHOE. SET UP AND BORED SHOE TO MAKE ROUND. SET UP NEW Y/F CUTLASS BEARING. MACHINED O.D TO PROPER SIZE. INSTALLED AND SECURED. TOOK NECESSARY MEASUREMENTS OF THE OLD RUDDER BLADE. SET UP THE FOLLOWING MATERIAL IN PLATE SHOP TO FABRICATE NEW RUDDER. BLADE. (1) 48"X 118" X ¾" MAIN RUDDER BLADE PLATE, (1) 11 1/2" X 108' X ¾" MAIN RUDDER BLADE SIDE EXTENSION. (1) 41/2" X ¾' FLAT BAR STIFFINERSX 56" LONG EA. (2) 6"X6"X1/2" ANGLE X 10 'EA AS LEADING EDGE ANGLES. FABRICATED NEW RUDDER AS PER SAMPLE.SAND BLASTED AND COATED. INSTALLED NEW (6) ZINC ANODES AND WELDED. FITTED RUDDER BLADE TO RUDDER STOCK WITH ASSOCIATED STIFFENERSAND WELDED. RIGGED NEW RUDDER AND INSTALLED. CUT RUDDER SHOE AND REWELDED AS NECESSARY FOR PROPER ALIGNMENT. INSTALLED NEW PACKING AND MADE UP ON PACKING GLAND. RE INSTALLED TILLER WITH NEW BOLTS AND SECURED.MADE NECESSARY RE-CONNECTIONS TO STEERING SYSTEM AS ORIGINAL. TESTED RUDDER MOVEMENT TO OWNER'S REP SATISFACTION. TOUCHED UP WELDED AREAS. DISMANTLED STAGING AND REMOVED ALL USED GEAR BACK TO SHOP.
        # ($ 33,300.22)

PAGE 2 OF 3

DATE MARCH 29, 2007 •

BILL NO. 14608

VESSEL " WILLIAM E " & OWNERS

CADDELL W.O# 070132

# CADDELL DRY DOCK AND REPAIR CO., INC., DR.

DRY DOCKS & SHIPYARD

718 442-2112
FAX: 718-981-7493
FOOT OF BROADWAY • P.O. BOX 327 • STATEN ISLAND, N.Y. 10310

NET 10 DAYS 1% PER MONTH SERVICE CHARGE AFTER 10 DAYS.

CONT--

## 6.) PROPELLER:-

FURNISHED LABOR, MATERIAL, EQUIPMENT. ERECTED NECESSARY STAGING AND SET UP NECESSARY GEAR. FLUSHED OFF WELDS AND REMOVED PROPELLER NUT STOPPER. RELEASED AND REMOVED PROPELLER NUT. RELEASED AND REMOVED WATER SEAL RETAINER RING AND REMOVED SEAL. SET UP STRONG BACK, APPLIED HEAT TO PROPELLER AND JUMPED. RIGGED PROPELLER, REMOVED FROM TAIL SHAFT AND LOADED ON OUT SIDE CONTRACTOR TRUCK FOR RECONDITIONING OWNER'S ACCOUNT. CLEANED P/S SHAFT TAPER. SET UP AND TOOK NECESSARY RUN OUT READINGS AND CHECKED CLEARANCES. TOOK DELIVERY OF O/F P/S RECONDITIONED PROPELLER, RIGGED, REMOVED FROM TRUCK AND TRANSFERRED TO VESSEL. AFTER COMPLETING SHAFTING REPAIRS. FITTED PROPELLER ON TAIL SHAFT AND INSTALLED. CLEANED AND RE-INSTALLED PROPELLER NUT. SET UP WEDGES, APPLIED HEAT TO PROPELLER AND DROVE UPON TAIL SHAFT. REMOVED WEDGES AND MADE UP PROPELLER NUT, INSTALLED, TACK WELDED STOPPER AND SECURED. INSTALLED NEW WATER SEAL. RE-INSTALLED RETAINER RING MADE UP SCREWS AND WIRLACED. COVERED PROPELLER NUT WITH PLUG CEMENT.                    # ($ 5,750.00)

## 7. TAIL SHAFT REPAIRS:-

FURNISHED LABOR, MATERIAL, EQUIPMENT. MADE NECESSARY REMOVALS IN ENGINE ROOM. RELEASED PORT / STBD STERN GLAND AND REMOVED PACKING. MADE NECESSARY DISCONNECTION TO TAIL SHAFT COUPLING AND REMOVED.WITHDREW TAIL SHAFT, RIGGED REMOVED AND FROM VESSEL AND TRANSFERRED TO MACHINE SHOP INCLUDING COUPLING, BOLTS. TEMP. INSTALLED TEMP. BLANK IWO STERN TUBE SIZE; 16" DIA X 3/8' PLATE. CHASED COUPLINGS BOLTS AS NEEDED.TOOK NECESSARY MIC READINGS IWO CUTLASS BEARINGS AND TAIL SHAFT. SET UP, CUT AND REMOVED EXISTING OLD S/S LINERS IWO PACKING AND INNER BEARING AS DIRECTED. SIZE: (1) 91/4" O.D X ¾" WALL SEAMLESS 304 S/S TUBING.CUT, FABRICATED AND BORED NEW S/S LINERS FOR TAIL SHAFT TO PROPER SIZE. SET UP NECESSARY GEAR TO SHRINK NEW LINERS ON TAIL SHAFT. HEATED AND INSTALLED INBOARD AND OUT BOARD LINERS ON TAIL SHAFT AND SECURED. SET UP AND MACHINED NEW LINERS TO PROPER SIZE FOR FIBER GLASS. UPON APPROVAL, APPLIED FIBER GLAS AND SHAFT COATING IWO EXPOSED AREAS BETWEEN LINERS, TESTED AND MADE UP AS ORIGINAL. UPON APPROVAL, RIGGED TAIL SHAFT TRANSFERRED TO VESSEL READY FOR INSTALLATION. REMOVED BLANK. SET UP NECESSARY GEAR. CLEANED AND RE-INSTALLED TAIL SHAFT. FITTED COUPLING ON TAIL SHAFTSL SHAFT AND INSTALLED MADE NECESSARY RE-CONNECTIONS TO TAIL SHAFT COUPLING AND MADE UP BOLTS, NUTS AND SECURED. DRILLED AND TAPPED STUFFING BOX AS NECESSARY FOR NEW S/S STUDS RENEWALS. INSTALLED NEW PACKING AND MADE UP ON PACKING GLAND. CHECKED STERN GLAND FOR LEAKS AND PROVED TIGHT. UPON APPROVAL, REINSTALLED ALL REMOVALS IN ENGINE ROOM AS ORIGINAL.          # ($ 32,976.20)

## 8.) SEA VALVES:-

FURNISHED LABOR, MATERIAL, EQUIPMENT. OPENED, SCRAPED OUT, THOROUGHLY CLEANED, GROUND IN SEATS FOR INSPECTION (1) 6" DIA AND (1) 2" SEA VALVES. UPON APPROVAL, CLOSED (1) 2" DI ASEA VALVE WITH NEW GASKET, BOLTS, and NUTS AND REPACKED AS ORIGINAL. AT OWNER'S REQUEST COMPLETELT REMOVED BEYOND REPAIR (1) 6" DIA VALVE FOR RENEWAL. INSTALLED (1) NEW O/F 6" DIA VALVE WITH NEW GASKET, BOLTS, AND NUTS. CHECKED SEA VALVES FOR LEAKS DURING UN-DOCKING OF VESSEL AND PROVED TIGHT.                                  # ($ 3,500.00)

## 9.) RAW WATER PIPING REPAIRS:-

FURNISHED LABOR, MATERIAL, EQUIPMENT. CROPPED, MADE TARGET AND RENEWD DEFFECTIVE RAW WATER PIPING IN ENGINE ROOM FOR MAIN ENGINE COOLING SYSTEM AS DIRECTED. SIZE: (1) 4" DIA EXHVY PIPE X 6 FT. WITH NECESSARY FITTINGS (3) 4" 45 DRGREE ELBOWS AND (1) LONG RADIOUS 90 DEGREE ELBOW AND (2) SHORT 90 DEGREE ELBOWS --ET. SECURED, TESTED AND PROVED TIGHT.

# ($ 4,200.00)

## 10.) ZINC ANODES:-

FURNISHED LABOR, MATERIAL, EQUIPMENT.UNBOLTED DETERIORATED ZINC ANODES AND REMOVED FROM HULL WHERE DIRECTED FOR RENEWALS. CHASRED STUDS THREADS AND CLEANED NUTS READY FOR NEW ZINC ANODES INSTALLATIONS. INSTALLED YARD FURNISHED 6" X 11/4" X 12" ZINC ANODES TO HULL WHERE DIRECTED, MADE UP NUTS AND SECURED.A TOTAL OF THIRTY (30) ANODES.          # ($ 4,430.00)

PAGE ___3___ OF ___3___

DATE ___MARCH 19, 2007___          BILL NO. _____

VESSEL _____ " WILLIAM E " & OWNERS _____

CADDELL W.O# 070132

# CADDELL DRY DOCK AND REPAIR CO., INC., DR.

——————————— DRY DOCKS & SHIPYARD ———————————

716 442-2112
FAX: 718-981-7493
FOOT OF BROADWAY • P.O. BOX 327 • STATEN ISLAND, N.Y. 10310

NET 10 DAYS 1% PER MONTH SERVICE CHARGE AFTER 10 DAYS.

CONT—

**11.) NEW TRANSDUCER INSTALLATION:-**
FURNISHED LABOR, MATERIAL, EQUIPMENT. LAYED OUT AND PROVIDED NECESSARY OPENINING TO HULL IWO FWD BALLAST TANK FOR NEW HOUSING AND TRANSDUCER INSTALLATION. SET UP MATERIAL AND FABRICATED 8" DIA EXHVY PIPE X 13" LONG, 8" FLANGE AND 8" DIA BLANK, ½" THREADED COUPLING FOR WIRE HI-HAT INSTALLATION. ALIGNED NEW HIGH HAT, FITTED IWO OF HULL PENETRATION AND WELDED. MOUNTED TRANSDUCER AND INSTALLED. TESTED AND PROVED TIGHT.          # ($ 4,100.00)

**12.) MISCELLANEOUS STEEL REPAIRS:-**
FURNISHED LABOR, MATERIAL, EQUIPMENT.SET UP NECESSARY FIRE LINE, STAGING TO ACCOMPLISH STEEL REPAIRS WHERE DIRECTED BY OWNER REP AS FOLLOWS:-
A.) WIRE BRUSHED AND WELDED SCATTERED WASTED SEAMS AND BUTTS IWO OF BOTTOM PLATING AS MARKED AND WELDED (3) PASSES.
B.) MADE NECESSARY TEMPLATES, LAYED NECESSARY SECTIONS OF 3/8" PLATE DOUBLERS AS FOLLOWS:-
(1) 48" X 72" X 3/8" PL & (1) 15"X20"X3/8" PL & (1) 19"X19"X3/8" PL & (1) 24"X14"X3/8" PL, (4) 26"X36"X3/8" PL.
(1) 60"X45"X3/8" PL & (1) 41"X12"X3/8" PL & (1) 11"X15"X3/8" PL & (2) 18"X13"X3/8" PL & (1) 16"X16"X3/8"PL
(1) 14"X22"X3/8" PL & (1) 22"X18"X3/8" PL & (1) 22"X25"X3/8"PL & (1) 24"X36"X3/8" PL & (1) 16"X19"X3/8" PL.
(2) 16"X24"X3/8" PL & (1) 25"X21"X3/8" PLATE.
CUT, SNAD BLASTED AND COATED. FITTED AS DOUBLERS IWO BOTTOM AND SIDE SHELL PLATING PORT AND STBD WHERE DIRECTED BY OWNER REP. TESTED AND PROVED TIGHT.
C.) CHECKED VESSEL DURING UNDOCKING AND LOCATED EXTRA LEAKS IWO OLD PLATES. AT OWNER'S REQUEST DRY-DOCKED VESSEL AGAIN. LOCATED NEW EXTRA LEAKS IN PRESENCE OF OWNER REP. SET UP NECESSARY FIRE LINE, STAGING TO ACCOMPLISH EXTRA STEEL REPAIRS WHERE DIRECTED BY OWNER REP AS FOLLOWS:-
MADE NECESSARY TEMPLATES, LAYED NECESSARY SECTIONS OF 5/8" PLATE DOUBLERS AS FOLLOWS:-
1) 30"X24"X3/8" PL & (1) 16"X24"X5/8" PL & (1) 16"X25"X3/8" PL & (1) 13"X13"X3/8" PLATE.
CUT, SNAD BLASTED AND COATED. FITTED AS DOUBLERS IWO LEAKING AREAS AND WELDED.TESTED AND PROVED TIGHT. HELD VESSEL ON FRY-DOCK, CHECKED VESSEL DURING UNDOCKING AND PROVED TIGHT.
          # ($ 17,450.30)

**13.) MISCELLANEOUS:-**
A.) AT OWNER'S REQUEST, PUMPED APPROX. 4000 GAL OF FUEL IWO FWD FUEL TANK AND STORED AS DIRECTED. UOPN COMPLETION, PUMPED FUEL BACK TO VESSEL.
B.) CLEANED VESSEL AND DRY DOCK IWO REPAIRS, REMOVED (4) DRUMS OF OILY WATER W/ RAGS, MUCK AND PROPERLY DISPOSED.          # ($ 5,700.00)
**14.) OVER TIME (PREMUIM)**
AT OWNER'S REQUEST WORKED OVER TIME AS NECESSARY.
ATOTAL OF 114 HRS @ $ 65.00          # ($ 7,410.00)

ALL FOR THE SUM OF ————————— $ 180,326.92

| INVOICE # | 070132 | | DATE 3/19/07 |
|-----------|--------|-----|--------------|
| COMPANY | | Norton | |
| G/L ACCT # | AMOUNT | JOB # | COST CODE |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Approved By: | | | |

**DONJON MARINE CO., INC., ET AL**

**MARINE INSURANCE**

**HULL - POLICY NO. 06/654**
**OCTOBER 20, 2006 - 12:01 A.M.**
**OCTOBER 20, 2007 - 12:01 A.M.**
**EASTERN STANDARD TIME**

**FRENKEL & CO., INC.**

**1740 BROADWAY – 5TH FLOOR**
**NEW YORK, NEW YORK  10019**

| | |
|---|---|
| **TELEPHONE:** | **(212) 488-0200** |
| **DIRECT TEL:** | **(212) 488-1828** |
| **FAX:** | **(212) 488-0323** |
| **E-MAIL:** | **jvalenza@frenkel.com** |

# INDEX

## MARINE INSURANCE

### HULL JOINT POLICY NO. 06/654

**PAGE**

Addidtional Assured..............................................................................6
Additional Assured/Loss Payee............................................................ 6
Additional Assured/Waiver of Subrogation (Blanket).........................................6
Amended Loss Payable Clause................................................................. 5-6
American Institute War Risks and Strikes Clauses
   (December 1, 1997) Form 87B-108......................................................10
American Institute Deliberate Damage
   (Pollution Hazard) Clause Form 6Z-4 ...................................................8
American Institute Hull Clauses Form 7.......................................................9
American Institute Tug Form 53R-1 ...........................................................7
American Hull Insurance Syndicate Addendum to American Institute
   War Risks and Strikes Clauses December 1, 1977 (April 1, 1984) ................10a
American Hull Insurance Syndicate Liner Negligence Clause
SP-7, June 2, 1977..........................................................................13

Assured.......................................................................................1
Assurers and Participations.............................................................. 14-14a
Automatic Acquisition Clause............................................................... 3-4
Cancellation Clause...........................................................................3
Contingent Coverage Clause...................................................................5
Contingent Tower's Liability Clause .........................................................4
Contractual Liability Extension .............................................................5
Deductible...................................................................................12
Endorsements to Policy.......................................................................15
                  and Subsequent
Extended Adventures and Perils Clause .......................................................4
Follow The Lead Clause.......................................................................3
Institute Radioactive Contamination Clause 1/10/90 .........................................11
Loss Payable Clause..........................................................................1
Navigation Limits ...........................................................................2
Particulars............................................................................... 2-6
Payment of Premium...........................................................................3
Schedule of Vessels.........................................................................12
Term of Insurance ...........................................................................1

<u>**Joint Policy No. 06/654**</u>

## <u>HULL POLICY</u>

### BY THIS

### POLICY OF INSURANCE

**THE SUBSCRIBERS** listed on <u>Pages14-14A</u> hereinafter referred to as the Underwriters, each severally, but not jointly, and not on the part of one for the other or any of the others, do make insurance and cause to be insured, for the amounts set opposite their respective names, lost or not lost, the Assured named in respect of the Vessels scheduled hereunder, subject to the conditions, warranties and other terms of this policy, including any endorsements now or hereafter attached to any part hereon.

THE ASSURED   **DONJON MARINE CO., INC., WITTE HEAVY LIFT, INC., WITTE HEAVY LIFT TOWING DIVISION, INC., WITTE MARINE EQUIPMENT COMPANY, JOHN A. WITTE, UNIVERSAL BARGE CORPORATION AND AFFILIATED, SUBSIDIARY ASSOCIATED COMPANIES, OR ENTITIES FORMED, ACQUIRED, MANAGED OR FINANCIALLY CONTROLLED, JOINT VENTURE, PARTNERSHIP OR INDIVIDUAL NOW CONSTITUTED OR AS MAY HEREINAFTER BE FORMED.**

FOR ACCOUNT OF THEMSELVES

Loss, if any, payable to **DONJON MARINE CO., INC.,** or order.  (And as Amended)

At and From   **OCTOBER 20, 2006 - 12:01 A.M., EASTERN STANDARD TIME**

To   **OCTOBER 20, 2007 - 12:01 A.M., EASTERN STANDARD TIME**

## DONJON MARINE CO., INC., ET AL

## PARTICULARS

### As Respects Tugs and/or Workboats

American Institute Tug Form 53R-1 (August 1, 1976), lines 101 through 103, 141 and 142 and the words "provided such charterers and/or repairers are not an Assured hereunder" on line 75 are deleted. Including Deliberate Damage (Pollution Hazard) Clause 1.2.76.

### As Respects All Other Vessels

American Institute Hull Clauses (June 2, 1977) Form 7, the words "provided such charterers and/or repairers are not an Assured hereunder" in line 83 are deleted.

### NAVIGATION LIMITS

### Tug "PAUL ANDREW", Barge "WITTE 106", Dump Scows "WITTE 4001" and "WITTE 4002", Crane Barges "COLUMBIA NEW YORK", "FARRELL 256", "CHESAPEAKE 1000" and Dredge "J.P. BOISSEAU"

Warranted confined to the use and navigation of the inland, coastwise and tributary waters of the United States between Eastport, Maine and Brownsville, Texas, including the Great Lakes, St. Lawrence, the Bahama Islands and Puerto Rico and between, or held covered.

### Tugs "ATLANTIC SALVOR", "MARY ALICE", "USNS POWHATAN" and "NARRAGANSETT"

American Institute Trade Warranties

### DONJON STORAGE BARGE" "310" and "CLARANCE E. SMITH"

Warranted laid up in port, or held covered.

### "DELAWARE BAY"

Warranted laid-up and out of commission under renovation.

### All Other Vessels

Warranted confined to the use and navigation of the inland, coastwise and tributary waters of the United States between Eastport, Maine and Norfolk, Virginia, or held covered.

**PAGE 3**

## DONJON MARINE CO., INC., ET AL

## PARTICULARS (CONTINUED)

### Follow The Lead Clause

It is agreed to follow the Lead Underwriter XL Specialty Insurance Company in regard to Alterations, Amendments, Additions, Endorsements, Cancellations and Extensions and changes of any nature and also in regard to Surveys and Settlement of Claims and Returns including, but not limited to, appointment of Surveyors and Attorneys.

**CANCELLATION RETURNS:** Either party may cancel this policy by giving thirty (30) days written notice to the other, if at the option of these Assurers, pro rata rates, if at the request of the Assured, short rates will be charged.

**PAYMENT OF PREMIUM:** It is specially agreed that the premium for this insurance shall be paid in quarterly installments.

### APPLYING TO ALL VESSELS INSURED HEREUNDER:

Collision and Tower's or Collision Liabilities provided to vessel value or $1,000,000. whichever is greater, each interest any one vessel, any one accident and/or occurrence.

American Institute War Risks and Strikes Clauses (December 1, 1977) Form 87B-108.

### AUTOMATIC ACQUISITION CLAUSE:

This insurance automatically extended to cover other vessels or floating equipment acquired, leased, chartered or loaned to the Assured or under construction or reconstruction for them. The Assured agrees to report additional vessels and/or equipment to **FRENKEL & CO., INC.** within ten (10) days of acquisition, etc. and pay premium thereon at pro rata of policy rates. The amount of insurance automatically provided hereunder on any one vessel is limited to and shall not exceed the largest sum previously insured on any one vessel of its type scheduled in this policy.

Additional vessels and/or equipment insured hereunder or otherwise added to this policy are subject to the payment of Full Annual Premium to these Underwriters in event of Total and/or Constructive Total Loss of the vessel from a peril insured hereunder.

Privilege is granted to charter or lease vessels to others. This insurance to automatically cover the interest of the charterers or lessees as additional Named Assureds hereunder where necessary or agreed by the terms of the charter parties or lease agreements.

**PAGE 4**

## DONJON MARINE CO., INC., ET AL

### PARTICULARS (CONTINUED)

When terms of the charter parties or lease agreements stipulate that insurance is to be provided by the charterers or lessees, privilege is granted to suspend the insurance provided hereunder subject to pro rata daily return premium for the period of time under charter or lease.

### EXTENDED ADVENTURES AND PERILS CLAUSE:

It is specially understood and agreed the Adventure Clause in this policy shall be interpreted to include the following perils which shall in no event be construed to limit the basic coverage provided hereunder:

"Loss or damage howsoever caused by theft, flood, cloudburst, tidal action, water current, rising water, ice, rain or other storm and/or tempest, tornado or windstorm,   landslide, falling object, listing, upset, miring down, capsizing, overturn."

**CONTINGENT TOWER'S LIABILITY CLAUSE:** It is understood and agreed insurance provided herein is extended to include Contingent Tower's/Collision Liability of the Assured with respect to the legal and/or contractual liabilities of the Assured for loss, damage or expense arising from towage by towing vessels not otherwise insured hereunder, owned and/or operated by towing operators other than the Assured, in respect to the towage of vessels being towed at law under towing arrangements entered into by the Assured with the owner and/or operator of the vessels to be towed.  The liability of Underwriters under this extension is limited to $1,000,000. any one accident or occurrence, subject to a deductible of $5,000. each accident or occurrence and further subject to the following:

1. Warranted single tow, or held covered, subject to prompt notice being given to Underwriters.

2. It is specially understood and agreed that the Assured will require evidence of full insurance, Tower's/Collision Liability coverage, from each sub-contractor.

3. Nothing contained herein shall be construed to waive these Assurers' rights of subrogation against any sub-contractor.

   Warranted no release of sub-contractor's tugs.

## DONJON MARINE CO., INC., ET AL

## PARTICULARS (CONTINUED)

### CONTINGENT COVERAGE CLAUSE

It is understood and agreed insurance provided herein, subject to all its terms, limitations and conditions shall respond for claims arising from the use and operation of vessels scheduled in this policy, while on charter or lease to others, in the event that coverage provided by the charterer or lessee shall for any reason be cancelled or terminated or deficient or not in effect.

### CONTRACTUAL LIABILITY EXTENSION

In consideration of the premium charged for this insurance, the coverage afforded under this policy is extended to insure the liability of the Assured arising out of hold harmless and/or indemnity agreements contained in such contracts which have been entered into by the Assured for the furnishing of vessel services. However, the coverage afforded by this contractual liability extension is subject to all other terms, conditions, exclusions, warranties and limitations of this policy.

The coverage afforded by this contractual extension applies to written or oral (if reduced to writing within 30 days) contracts which have been entered into by the Assured prior to an accident/occurrence giving rise to a claim hereunder.

**LIMIT OF LIABILITY:** $1,000,000. any one accident or occurrence.

### AMENDED LOSS PAYABLE CLAUSE:

Loss, if any, payable to **DONJON MARINE CO., INC.** and **WACHOVIA BANK,**
its successors and/or assigns as their respective interest my appear with respects to the
following vessels:

| | |
|---|---|
| **"ATLANTIC SALVOR"** | **"CHESAPEAKE 1000"** |
| **"COLUMBIA NEW YORK"** | **"MARY ALICE"** |
| **"MICHIGAN"** | **"FARRELL 256"** |
| **"PAUL ANDREW"** | **"MATTHEW SCOTT"** |
| **"WITTE 4001"** | **"WITTE 4002"** |
| **"310"** | **"WITTE 106"** |
| **"440"** | **"MOGUL"** |
| **"GREENBAY"** | **"308"** |
| **"MONARCH 3"** | **"441** |
| **"NEWARK BAY'** | **"CLARENCE E. SMITH"** |

## DONJON MARINE CO., INC., ET AL

## PARTICULARS (CONTINUED)

### ADDITIONAL ASSURED/LOSS PAYEE:

Donald C. and Eleanor J. Glanville Recovable Trust as respects **"COLUMBIA NEW YORK"**.

United States of America (Department of Navy) as respects **"USNS POWHATAN"** with thirty (30) days written notice of cancellation shall be given to the Office of the Assistant Secretary of the Navy, (Research, Development and Acquisition), ABM PR, 2211 South Clark Place, Arlington, VA 22244-5104.

### ADDITIONAL ASSURED/WAIVER OF SUBROGATION (BLANKET)

It is further agreed that to the extent that the Named Assured is obligated by written contract to name any one person or organization as Additional Assureds hereunder, and/or waive rights of subrogation in favor thereof, the Underwriters agree that such persons or company shall be considered as Additional Assureds and rights of subrogation are hereby waived but only with respect to the Vessel(s) working for the Additional Assured(s) and/or operations performed by or on behalf of the Named Assured(s).

# DONJON MARINE CO., INC., ET AL

# AMERICAN INSTITUTE TUG FORM 53R-1, AUGUST 1, 1976

To be attached to and form a part of Policy No. _____ of the _____

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

**ASSURED**

This Policy insures_____  1
_____ hereinafter referred to as the Assured.  2
If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent  3
than would the Owner, had claim been made by the Owner as an Assured named in this Policy.  4
Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver  5
shall not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid  6
companies, or with respect to any loss, damage or expense against which such companies are insured.  7

**LOSS PAYEE**

Loss, if any, (excepting claims required to be paid to others under the Collision and Tower's Liability Clause), payable to _____  8
_____  9
_____ or order. 10

**VESSEL**

The Subject Matter of this insurance is the Vessel called the _____  11
or by whatsoever name or names the said Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull,  12
launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insulation,  13
motor generators and other electrical machinery.  14
In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed respon-  15
sibility therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.  16
In the event that more than one vessel is insured by this Policy, all of these clauses shall apply as though a separate policy had been issued  17
with respect to each vessel.  18

**TRADING WARRANTY**

Warranted that the Vessels shall be confined to _____  19
_____  20
Any breach of the Trading Warranty specified in this Policy shall result in a suspension thereof, provided, however, that on the return of the  21
Vessel in a seaworthy condition to within the limit stated in the said Trading Warranty this Policy shall re-attach and continue in full force and effect  22
but in no event beyond the normal expiry thereof.  23

**DURATION OF RISK**

From the _____ day of _____ 20__ ,_____ time.  24
to the_____ day of _____ 20__ ,_____ time.  25
Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice  26
be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.  27
In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.  28

**AGREED VALUE**

The Vessel, for so much as concerns the Assured, by agreement between the Assured and Underwriters in this Policy, is and shall be valued at  29
_____ Dollars.  30

**AMOUNT INSURED HEREUNDER**_____ Dollars.  31

**PREMIUM**

The Underwriters to be paid in consideration of this insurance _____  32
_____ Dollars being at the rate of _____ per cent.,  33
which premium shall be due on attachment.  34

**DEDUCTIBLE**

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue
and Labor Clause and claims under the Collision and Tower's Liability Clause) arising out of each separate accident, the sum of $ _____  36
_____ Dollars, unless the accident results in a Total Loss of the Vessel in which case this clause shall not apply to the claim  37
for the Total Loss of the Vessel and to claims under the Sue and Labor clause. A recovery from other interests, however, shall not operate to exclude  38
claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that sum.  39
For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same accident  40
shall be treated as due to that accident and (b) all heavy weather damage which occurs during a single sea passage between two successive ports  41
shall be treated as though due to one accident.  42

**RETURNS OF PREMIUM**

Premium returnable as follows:  43
pro rata daily in the event of termination under the Change of Ownership clause;  44
pro rata daily if this Policy be cancelled by the Underwriters;  45
short rate will be charged if this Policy be cancelled by the Assured;  46

_____ cents per cent., for each period of 30 consecutive days the Vessel may be laid up in port not under repair;    47
rovided always that:    48

(a) from all return premiums the same percentage of deduction (if any) shall be made as was allowed by the Underwriters on receipt of the original    49
    premium;    50
(b) a Total Loss of the Vessel has not occurred during the currency of this Policy;    51
(c) in no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved by    52
    the Underwriters;    53
(d) in the event of any amendment or the annual rate, the above rates of return shall be adjusted accordingly.    54
    If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such    55
proportion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed    56
30 consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable.    57
**CANCELLATION**
    This Policy may be cancelled either by the Underwriters or by the Assured giving 15 days' written or telegraphic notice to the other. Underwriters'    58
notice may be sent to the Assured's last known address or in care of the Broker who negotiated this Policy. In the event of Total Loss of the Vessel    59
occurring prior to any cancellation or termination of this Policy, full annual premium shall be considered earned.    60
**ADVENTURE**
    Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, subject to all the terms, conditions    61
and warranties of this Policy, as employment may offer, in port or at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times,    62
in all places, and on all occasions.    63
**PERILS**
    Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Waters named herein,    64
Fire, Lightning, Earthquake, Assailing Thieves, Jettisons, Barratry of the Master and Mariners and all other like Perils that shall come to the Hurt, De-    65
triment or Damage of the Vessel.    66
**ADDITIONAL PERILS (INCHMAREE)**
    Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following:    67
      Accidents in loading, discharging or handling cargo, or in bunkering;    68
      Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons:    69
      Explosions on shipboard or elsewhere;    70
      Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any    71
      Latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part);    72
      Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel;    73
      Contact with aircraft, rockets or similar missiles, or with any land conveyance;    74
      Negligence of Charterers and/or Repairers, provided such Charterers and/or Repairers are not an Assured hereunder;    75
      Negligence of Masters, Officers, Crew or Pilots;    76
provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them.    77
**COLLISION AND TOWERS LIABILITY**
And it is further agreed that:    78
(a) if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall    79
    strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any    80
    other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured, or the Surety, in consequence of the    81
    insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums,    82
    we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our    83
    subscriptions hereto bear to the Value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not    84
    exceed our proportionate part of the value of the Vessel hereby insured;    85
(b) in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing, of a    86
    majority (in amount) of the Underwriters on the hull and machinery, we will also pay a like proportion of the costs which the Assured shall    87
    thereby insure or be compelled to pay.    88
When both vessels are to blame, then, unless the liability of the Owners of one or both of such vessels becomes limited by law, claims under    89
the Collision and Tower's Liability clause shall be settled on the principle of Cross-Liabilities, as if the Owners of each vessel had been compelled to pay    90
to the Owners of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining    91
the balance or sum payable by or to the Assured in consequence of such casualty.    92
It is hereby further agreed that the principles involved in this clause shall apply to the case where two or more of the vessels involved are the    93
property, in part or in whole, of the same Assured, all questions of responsibility and amount of liability as between such Vessels being left to the    94
decision of a single Arbitrator, if the parties can agree upon a single Arbitrator, or failing such agreement, to the decision of Arbitrators, one to be    95
appointed by the Assured and one to be appointed by a majority (in amount) of the Underwriters on hull and machinery; the two Arbitrators so chosen    96
to choose a third Arbitrator before entering upon the reference, and the decision of such single Arbitrator, or of any two of such three Arbitrators,    97
appointed as above, to be final and binding.    98
Provided always that this Collision and Tower's Liability clause shall in no case extend to any sum which the Assured or the Surety may become    99
liable to pay, or shall pay:    100
I.    for loss, damage or expense to vessel(s) in tow owned (other than vessel(s) bareboat chartered to others), bareboat chartered, managed or operated    101
by the Assured and/or its affiliated and/or subsidiary companies and/or corporations, and to cargo, owned by the Assured and/or its affiliated and/or sub-    102
sidiary companies and/or corporations, on board vessel(s) in tow of the Vessel hereby insured;or    103
II.    in consequence of, with respect to, or arising out of:    104
(a) removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law;    105
(b) cargo, baggage or engagements of the insured Vessel;    106
(c) loss of life, personal injury or illness;    107
(d) the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever.    108
    Provided, further that Exclusion II(d) shall not apply to actual physical loss of or damage to such substances (if liability therefore is otherwise    109
covered under the attached Policy) except to the extent that such loss or damage arises out of any action taken to avoid, minimize or remove any dis-    110
charge, spillage, emission or leakage described in Exclusion II(d).    111
**GENERAL AVERAGE AND SALVAGE**
    General Average and Salvage shall pe payable in accordance with the laws and usages of the port of New York, but excluding wages, provisions,    112

fuel and engine stores during detention however caused. 113

And it is further agreed that in the event of salvage, towage or other assistance being rendered to the Vessel hereby insured by any vessel belonging in 114
part or in whole to the same owners or charterers, the value of such services (without regard to the common ownership or control of the vessels) shall 115
be ascertained by arbitration in the manner above provided for under the Collision and Tower's Liability clause, and the amount so awarded so far as 116
applicable to the interest hereby insured shall constitute a charge under this Policy. 117

When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribu- 118
tion (except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel 119
which the amount insured hereunder bears to the contributory value; and if, because of damage for which the Underwriters are liable as Particular Aver- 120
age, the value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this 121
Policy shall first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount 122
bears to the contributory value. 123

## SUE AND LABOR

And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and 124
travel for, in, and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges 125
whereof the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or 126
Assured in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment. 127

In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured 128
hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual value 129
of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate part 130
of the Agreed Value. 131

If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized 132
or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for 133
loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always 134
that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The forgoing shall also apply to expenses 135
reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been 136
incurred in respect of the Vessel. 137

## SEAWORTHINESS

The Underwriters shall not be liable for any loss, damage or expense arising out of the failure of the Assured to exercise due diligence to maintain 138
the Vessel in a seaworthy condition after attachment of this Policy; the foregoing, however, not to be deemed a waiver of any warranty of seaworthiness 139
implied at law. 140

## WATCHMAN

It is agreed that when this Vessel is tied up or moored, it shall be at all times in charge of a watchman in the employ of the Assured, whose duty 141
it shall be to make careful examination of the Vessel throughout at reasonable intervals, including inspection of the bilges. 142

## CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be 143
chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or 144
withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, 145
flag, management, charter, requisition or classification; provided, however, that in the event of an involuntary temporary transfer by requisition or 146
otherwise, without the prior execution of a written agreement by the Assured, such automatic termination shall occur fifteen days after such transfer. 147
This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between the 148
time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against the 149
transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the amount 150
insured hereunder bears to the Agreed Value. 151

The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, 152
and it shall not apply to any internal changes within the offices of the Assured. 153

## ADDITIONAL INSURANCES

It is a condition of this Policy that there shall be no other insurance against physical loss of or damage to the Vessel for or on account of the 154
Assured except that the Assured may, without prejudice to this insurance, insure: 155

(a)  War, Strikes and related risks not covered by this Policy; 156
(b)  Risks identical to those covered by this Policy for the difference in amount, if any, between the "AMOUNT INSURED HEREUNDER" and the 157
      "AGREED VALUE"; 158
provided that any breach of the above condition shall not afford the Underwriters any defense to a claim by a mortgagee who has accepted this Policy 159
without knowledge of such breach. 160

## CLAIMS (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the 161
Underwriters, and: 162

(a)  where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire; 163
(b)  the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured 164
      for the actual additional expense of the voyage arising from compliance with the Underwriters' requirement); 165
(c)  the Underwriters shall have the right of veto in connection with any repair firm proposed; 166
(d)  the Underwriters may take tenders or may require tenders to be taken for the repair of the Vessel, in which event, upon acceptance of a 167
      tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent., per annum on the amount insured, for 168
      each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent 169
      that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the 170
      Underwriters' approval. 171

Due credit shall be given against the allowances in (b) and (d) above for any amount recovered: 172
(1)  in respect of fuel, stores, and wages and maintenance of the Master, Officers, and Crew members allowed in General or Particular Average; 173
(2)  from third parties in respect of damages for detention and/or loss of profit and/or running expenses; for the period covered by the allow- 174
      ances or any parts thereof. 175

No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers and Crew, except when incurred solely for 176
the necessary removal of the Vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and 177
maintenance will be allowed only while the vessel is underway. 178

General and Particular Average shall be payable without deduction, new for old. 179

The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found. 180
No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom. 181
In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the 182
Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or 183
apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less. 184
No claim for unrepaired damage shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period 185
of this Policy and unrepaired at the expiration thereof shall be demonstrated by the Assured to have diminished the actual market value of the 186
Vessel on that date if undamaged by such perils. 187

**TOTAL LOSS**
There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the Agreed 188
Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising from the 189
same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be claimed separately
under the Sue and Labor clause. 191
In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of 192
the damaged or break-up value of the Vessel or wreck shall be taken into account. 193
In the event of Total Loss (actual or constructive), no claim to be made by the Underwriters for freight, whether notice of abandonment has been 194
given or not. 195
In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the Period covered by this 196
Policy. 197

**SUBROGATION**
Upon making any payment under this Policy the Underwriters shall be vested with all of the Assured's rights of recovery against any person, 198
corporation, vessel or interest, and the Assured shall execute and deliver such instruments and papers as the Underwriters shall require and do whatever 199
else is necessary to secure such rights at the time of payment or subsequent thereto. At the option of the Underwriters, such payment may be made 200
by means of a loan receipt repayable only out of any recovery made by the Underwriters, such loan receipt shall be in the customary form 201
permitting Underwriters to bring suit in the name of the Assured or the Underwriters at the latters' own cost and expense. 202
Any agreement, contract or act, past or future, express or implied, by the Assured whereby any right of recovery of the Assured against any person, 203
corporation, vessel or interest is released, decreased, transferred or lost which would, on payment of claim by the Underwriters, belong to the Underwriters 204
but for such agreement, contract or act shall render this Policy null and void as to the amount of any such claim, but only to the extent and to the 205
amount that said agreement, contract or act releases, decreases, transfers, or causes the loss of any right or recovery of the Underwriters, but the Under- 206
writers' right to retain or recover the full premium shall not be affected. 207

**LITIGATION AND DEFENSE**
The Underwriters shall have the option of naming the attorneys who shall represent the Assured in the prosecution or defense of any litigation 208
or negotiations between the Assured and third parties concerning any claim, loss or interest covered by this Policy, and the Underwriters shall have the 209
direction of such litigation or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by the Underwriters, the liability of the 210
Underwriters to the Assured shall be limited to the amount for which settlement could have been made                . 211
No suit, action or proceedings brought by the Assured against the Underwriters for the recovery of any claim under this Policy shall be sustainable 212
in any court of law or equity unless the same be commenced within twelve (12) months after the Underwriters have denied liability for payment of claim; 213
except that in the case of a claim arising under the Collision and Tower's Liability clause, no suit or action shall be sustainable unless brought within 214
twelve (12) months next after the Assured shall have discharged his liability. Provided, however, that if by the laws of the State within which this Policy 215
is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of 216
time permitted by the laws of such State. 217

**WAR, STRIKES AND RELATED EXCLUSIONS**
The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy. 218
This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of: 219
(a)   Capture, seizure, arrest, restraint or detainment, or any attempt thereat; or 220
(b)   Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or 221
(c)   Any mine, bomb or torpedo not carried as cargo on board the Vessel; or 222
(d)   Any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter; or 223
(e)   Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or 224
(f)   Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power, malicious acts or vandalism; or 225
(g)   Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (g) not to exclude collision or contact with 226
aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly 227
by a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned 228
or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining naval, 229
military or air forces in association with a power. 230
If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the 231
above conditions only to the extent that the terms of such endorsement are inconsistent therewith and only while such endorsement remains in force. 232

# PAGE 8

## DONJON MARINE CO., INC., ET AL

## AMERICAN INSTITUTE DELIBERATE DAMAGE (POLLUTION HAZARD)
## CLAUSE FORM 6Z-4, FEBRUARY 1, 1976

To be attached to and form a port of Policy No. ................................................................... of ...................................

.......................................................................................................................................................................

Insuring ...........................................................................................................................................................

.......................................................................................................................................................................

In consideration of premium paid it is understood and agreed that, subject to the terms and conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat.  Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel.

All other terms and conditions remaining unchanged.

Dated, ................................................... 20 .........

..........................................................................................

**PAGE 9**

**DONJON MARINE CO., INC., ET AL**

# AMERICAN INSTITUTE HULL CLAUSES FORM 7, JUNE 2, 1977

To be attached to and form a part of Policy No. _____of the _____

The terms and conditions of the following clauses are to be regarded as substituted for those of the policy form to which they are attached, the latter being hereby waived, except provisions required by law to be inserted in the Policy. All captions are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

## ASSURED

This Policy insures _____ 1

_____ 2

_____ hereinafter referred to as the Assured.  3

If claim is made under this Policy by anyone other than the Owner of the Vessel, such person shall not be entitled to recover to a greater extent  4

than would the Owner, had claim been made by the Owner as an Assured named in this Policy.  5

Underwriters waive any right of subrogation against affiliated, subsidiary or interrelated companies of the Assured, provided that such waiver shall  6

not apply in the event of a collision between the Vessel and any vessel owned, demise chartered or otherwise controlled by any of the aforesaid com-  7

panies, or with respect to any loss, damage or expense against which such companies are insured.  8

## LOSS PAYEE

Loss, if any, payable to _____ 9

_____ 10

_____ or order.  11

Provided, however, Underwriters shall pay claims to others as set forth in the Collision Liability clause and may make direct payment to persons  12

providing security for the release of the Vessel in Salvage cases.  13

## VESSEL

The Subject Matter of this insurance is the Vessel called the _____ 14

or by whatsoever name or names the Vessel is or shall be called, which for purposes of this insurance shall consist of and be limited to her hull,  15

launches, lifeboats, rafts, furniture, bunkers, stores, supplies, tackle, fittings, equipment, apparatus, machinery, boilers, refrigerating machinery, insula-  16

tion, motor generators and other electrical machinery.  17

In the event any equipment or apparatus not owned by the Assured is installed for use on board the Vessel and the Assured has assumed respon-  18

sibility therefor, it shall also be considered part of the Subject Matter and the aggregate value thereof shall be included in the Agreed Value.  19

Notwithstanding the foregoing, cargo containers, barges and lighters shall not be considered a part of the Subject Matter of this insurance.  20

## DURATION OF RISK

From the _____ day of _____ 20 05, _____time  21

to the _____day of _____ 20 06, _____ time.  22

Should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or of call, she shall, provided previous notice be  23

given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination.  24

In the event of payment by the Underwriters for Total Loss of the Vessel this Policy shall thereupon automatically terminate.  25

## AGREED VALUE

The Vessel, for so much as concerns the Assured, by agreement between the Assured and the Underwriters in this Policy, is and shall be valued at  26

_____Dollars.  27

## AMOUNT INSURED HEREUNDER

_____Dollars.  28

## DEDUCTIBLE

Notwithstanding anything in this Policy to the contrary, there shall be deducted from the aggregate of all claims (including claims under the Sue  29

and Labor clause and claims under the Collision Liability clause) arising out of each separate accident, the sum of $_____, unless the  30

accident results in a Total Loss of the Vessel in which case this clause shall not apply. A recovery from other interests, however, shall not operate to  31

exclude claims under this Policy provided the aggregate of such claims arising out of one separate accident if unreduced by such recovery exceeds that  32

sum. For the purpose of this clause each accident shall be treated separately, but it is agreed that (a) a sequence of damages arising from the same acci-  33

dent shall be treated as due to that accident and (b) all heavy weather damage, or damage causes by contact with floating ice, which occurs during a  34

single sea passage between two successive ports shall be treated as though due to one accident.  35

## PREMIUM

The Underwriters to be paid in consideration of this insurance _____Dollars  36

being at the annual rate of _____ per cent., which premium shall be due on attachment. If the Vessel  37

is insured under this Policy for a period of less than one year at pro rata of the annual rate, full annual premium shall be considered earned and immedi-  38

ately due and payable in the event of a Total Loss of the Vessel.  39

## RETURNS OF PREMIUM

Premium returnable as follows:  40

Pro rata daily net in the event of termination under the Change of Ownership clause; 41

Pro rata monthly net for each uncommenced month if it be mutually agreed to cancel this Policy; 42

For each period of 30 consecutive days the Vessel may be laid up in port for account of the Assured, 43

_____ cents per cent. net not under repair, or 44

_____ cents per cent. net under repair; 45

provided always that: 46

   (a) a Total Loss of the Vessel has not occurred during the currency of this Policy; 47

   (b) in no case shall a return for lay-up be allowed when the Vessel is lying in exposed or unprotected waters or in any location not approved 48

    by the Underwriters; 49

   (c) in the event of any amendment of the annual rate, the above rates of return shall be adjusted accordingly; 50

   (d) in no case shall a return be allowed when the Vessel is used as a storage ship or for lightering purposes. 51

   If the Vessel is laid up for a period of 30 consecutive days, a part only of which attaches under this Policy, the Underwriters shall pay such pro- 52

portion of the return due in respect of a full period of 30 days as the number of days attaching hereto bears to 30. Should the lay-up period exceed 30 53

consecutive days, the Assured shall have the option to elect the period of 30 consecutive days for which a return is recoverable. 54

## NON-PAYMENT OF PREMIUM

In event of non-payment of premium 30 days after attachment, or of any additional premium when due, this Policy may be cancelled by the Under- 55
writers upon 10 days written or telegraphic notice sent to the Assured at his last known address or in care of the broker who negotiated this Policy. 56
Such proportion of the premium, however, as shall have been earned up to the time of cancellation shall be payable. In the event of Total Loss of the 57
Vessel occurring prior to any cancellation or termination of this Policy full annual premium shall be considered earned. 58

## ADVENTURE

Beginning the adventure upon the Vessel, as above, and so shall continue and endure during the period aforesaid, as employment may offer, in port or 59
at sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times, in all places, and on all occasions, services and trades; with leave 60
to sail or navigate with or without pilots, to go on trail trips and to assist and tow vessels or craft in distress, but the Vessel may not be towed, except 61
as is customary or when in need of assistance, nor shall the Vessel render assistance or undertake towage or salvage services under contract previously 62
arranged by the Assured, the Owners, the Managers or the Charterers of the Vessel, nor shall the Vessel, in the course of trading operations, engage in 63
loading or discharging cargo at sea, from or into another vessel other than a barge, lighter or similar craft used principally in harbors or inland waters. 64
The phrase "engage in loading or discharging cargo at sea" shall include while approaching, leaving or alongside, or while another vessel is approaching, 65
leaving or alongside the Vessel.

The Vessel is held covered in case of any breach of conditions as to cargo, trade, locality, towage or salvage activities, or date of sailing, or loading 67
or discharging cargo at sea, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured and (b) 68
any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured. 69

## PERILS

Touching the Adventures and Perils which the Underwriters are contented to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, 70
Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Re- 71
straints and Detainments of all Kings, Princes and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all 72
other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, how- 73
ever, such of the foregoing perils as may be excluded by provisions elsewhere in the Policy or by endorsement thereon. 74

## ADDITIONAL PERILS (INCHMAREE)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by the following: 75

   Accidents in loading, discharging or handling cargo, or in bunkering; 76

   Accidents in going on or off, or while on drydocks, graving docks, ways, gridirons or pontoons; 77

   Explosions on shipboard or elsewhere; 78

   Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any 79

   latent defect in the machinery or hull, (excluding the cost and expense of replacing or repairing the defective part); 80

   Breakdown of or accidents to nuclear installations or reactors not on board the insured Vessel; 81

   Contact with aircraft, rockets or similar missiles, or with any land conveyance; 82

   Negligence of Charterers and/or Repairers, provided such Charterers and or Repairers, are not an Assured hereunder; 83

   Negligence of Masters, Officers, Crew or Pilots; 84

provided such loss or damage has not resulted from want of due diligence by the Assured, the Owners or Managers of the Vessel, or any of them. 85
Masters, Officers, Crew or Pilots are not to be considered Owners within the meaning of this clause should they hold shares in the Vessel. 86

## DELIBERATE DAMAGE (POLLUTION HAZARD)

Subject to the conditions of this Policy, this insurance also covers loss of or damage to the Vessel directly caused by governmental authorities 87
acting for the public welfare to prevent or mitigate a pollution hazard, or threat thereof, resulting directly from damage to the Vessel for which the 88
Underwriters are liable under this Policy, provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the 89
Owners, or Managers of the Vessel or any of them to prevent or mitigate such hazard or threat. Masters, Officers, Crew or Pilots are not to be considered 90
Owners within the meaning of this clause should they hold the shares in the Vessel. 91

## CLAIMS (GENERAL PROVISIONS)

In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Under- 92
writers, and: 93

   (a)  where practicable, the Underwriters shall be advised prior to survey, so that they may appoint their own surveyor, if they so desire; 94

   (b)  the Underwriters shall be entitled to decide where the Vessel shall proceed for docking and/or repair (allowance to be made to the Assured for the 95

      actual additional expense of the voyage arising from compliance with the Underwriters' requirement); 96

   (c)  the Underwriters shall have the right of veto in connection with any repair firm proposed; 97

   (d)  the Underwriters may take tenders or may require tenders to be taken for the repair of the Vessel, in which event, upon acceptance 98

      of a tender with the approval of the Underwriters, an allowance shall be made at the rate of 30 per cent. per annum on the amount insured, for 99

each day or pro rata for part of a day, for time lost between the issuance of invitations to tender and the acceptance of a tender, to the extent 100
that such time is lost solely as the result of tenders having been taken and provided the tender is accepted without delay after receipt of the 101
Underwriters' approval. 102
Due credit shall be given against the allowances in (b) and (d) above for any amount recovered: 103
(1)   in respect of fuel, stores, and wages and maintenance of the Master, Officers and Crew allowed in General or Particular Average; 104
(2)   from third parties in respect of damages for detention and/or loss of profit and/or running expenses; 105
for the period covered by the allowances or any parts thereof. 106
No claim shall be allowed in Particular Average for wages and maintenance of the Master, Officers and Crew, except when incurred solely for the 107
necessary removal of the vessel from one port to another for average repairs or for trial trips to test average repairs, in which cases wages and mainte- 108
nance will be allowed only while the vessel is under way. This exclusion shall not apply to overtime or similar extraordinary payments to the Master, 109
Officers or Crew incurred in shifting the Vessel for tank cleaning or repairs or while specifically engaged in these activities, either in port or at sea. 110

General and Particular Average shall be payable without deduction, new for old. 111
The expense of sighting the bottom after stranding shall be paid, if reasonably incurred especially for that purpose, even if no damage be found. 112
No claim shall in any case be allowed in respect of scraping or painting the Vessel's bottom. 113
In the event of loss or damage to equipment or apparatus not owned by the Assured but installed for use on board the Vessel and for which the 114
Assured has assumed responsibility, claim shall not exceed (1) the amount the Underwriters would pay if the Assured were owner of such equipment or 115
apparatus, or (2) the contractual responsibility assumed by the Assured to the owners or lessors thereof, whichever shall be less. 116
No claim for unrepaired damage shall be allowed, except to the extent that the aggregate damage caused by perils insured against during the period 117
of this Policy and left unrepaired at the expiration of the Policy shall be demonstrated by the Assured to have diminished the actual market value of the 118
Vessel on that date if undamaged by such perils. 119

## GENERAL AVERAGE AND SALVAGE
General Average and Salvage shall be payable as provided in the contract of affreightment, or failing such provision or there be no contract of 120
affreightment, payable at the Assured's election either in accordance with York-Antwerp Rules 1950 or 1974 or with the Laws and Usages of the Port of 121
T.B.A. Provided always that when an adjustment according to the laws and usages of the port of destination is properly demanded by the owners 122
of the cargo, General Average shall be paid accordingly. 123
In the event of salvage, towage or other assistance being rendered to the Vessel by any vessel belonging in part or in whole to the same Owners or 124
Charterers, the value of such services (without regard to the common ownership or control of the vessels) shall be ascertained by arbitration in the man- 125
ner provided for under the Collision Liability clause in this Policy, and the amount so awarded so far as applicable to the interest hereby insured shall 126
constitute a charge under this Policy. 127
When the contributory value of the Vessel is greater than the Agreed Value herein, the liability of the Underwriters for General Average contribution 128
(except in respect to amounts made good to the Vessel), or Salvage, shall not exceed that proportion of the total contribution due from the Vessel which 129
the amount insured hereunder bears to the contributory value; and if, because of damage for which the Underwriters are liable as Particular Average, the 130
value of the Vessel has been reduced for the purpose of contribution, the amount of such Particular Average damage recoverable under this Policy shall 131
first be deducted from the amount insured hereunder, and the Underwriters shall then be liable only for the proportion which such net amount 132
bears to the contributory value. 133

## TOTAL LOSS
In ascertaining whether the Vessel is a constructive Total Loss the Agreed Value shall be taken as the repaired value and nothing in respect of the 134
damaged or break-up value of the Vessel or wreck shall be taken into account. 135
There shall be no recovery for a constructive Total Loss hereunder unless the expense of recovering and repairing the Vessel would exceed the 136
Agreed Value. In making this determination, only expenses incurred or to be incurred by reason of a single accident or a sequence of damages arising 137
from the same accident shall be taken into account, but expenses incurred prior to tender of abandonment shall not be considered if such are to be 138
claimed separately under the Sue and Labor clause. 139
In the event of Total Loss (actual or constructive), no claims to be made by the Underwriters for freight, whether notice of abandonment has been 140
given or not. 141
In no case shall the Underwriters be liable for unrepaired damage in addition to a subsequent Total Loss sustained during the period covered by this 142
Policy. 143

## SUE AND LABOR
And in case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel 144
for, in, and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to this insurance, to the charges whereof 145
the Underwriters will contribute their proportion as provided below. And it is expressly declared and agreed that no acts of the Underwriters or Assured 146
in recovering, saving or preserving the Vessel shall be considered as a waiver or acceptance of abandonment. 147
In the event of expenditure under the Sue and Labor clause, the Underwriters shall pay the proportion of such expenses that the amount insured 148
hereunder bears to the Agreed Value, or that the amount insured hereunder (less loss and/or damage payable under this Policy) bears to the actual 149
value of the salved property, whichever proportion shall be less; provided always that their liability for such expenses shall not exceed their proportionate 150
part of the Agreed Value. 151
If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized 152
or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction 153
for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided 154
always that the Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to 155
expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having 156
been incurred in respect of the Vessel. 157

## COLLISION LIABILITY
And it is further agreed that: 158
(a)   if the Vessel shall come into collision with any other ship or vessel, and the Assured or the Surety in consequence of the Vessel being at fault 159
shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in respect of such collision, the 160
Underwriters will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as their respective sub- 161
scriptions hereto bear to the Agreed Value, provided always that their liability in respect to any one such collision shall not exceed their propor- 162

tionate part of the Agreed Value; 163

   (b)  in cases where, with the consent in writing of a majority (in amount) of Hull Underwriters, the liability of the Vessel has been contested, or pro- 164
ceedings have been taken to limit liability, the Underwriters will also pay a like proportion of the costs which the Assured shall thereby incur 165
or be compelled to pay. 166

When both vessels are to blame, then, unless the liability of the owners or charterers of one or both such vessels becomes limited by law, claims 167
under the Collision Liability clause shall be settled on the principle of Cross-Liabilities as if the owners or charterers of each vessel had been compelled 168
to pay to the owners or charterers of the other of such vessels such one-half or other proportion of the latter's damages as may have been properly allowed 169
in ascertaining the balance of sum payable by or to the Assured in consequence of such collision. 170
The principles involved in this clause shall apply to the case where both vessels are the property, in part or in whole, of the same owners or chart- 171
erers, all questions of responsibility and amount of liability as between the two vessels being left to the decision of a single Arbitrator, if the parties 172
can agree upon a single Arbitrator, or failing such agreement, to the decision of the Arbitrators, one to be appointed by the Assured and one to be appointed 173
by the majority (in amount) of Hull Underwriters interested; the two Arbitrators chosen to choose a third Arbitrator before entering upon the reference, 174
and the decision of such single Arbitrator, or of any two of such three Arbitrators, appointed as above, to be final and binding. 175
Provided always that this clause shall in no case extend to any sum which the Assured or Surety may become liable to pay or shall pay in conse- 176
quence of, or with respect to: 177

   (a)  removal or disposal of obstructions, wrecks or their cargoes under statutory powers or otherwise pursuant to law; 178
   (b)  injury to real or personal property of every description; 179
   (c)  the discharge, spillage, emission or leakage of oil, petroleum products, chemicals or other substances of any kind or description whatsoever; 180
   (d)  cargo or other property on or the engagements of the Vessel; 181
   (e)  loss of life, personal injury or illness. 182

Provided further that exclusions (b) and (c) above shall not apply to injury to other vessels or property thereon except to the extent that such injury 183
arises out of any action taken to avoid, minimize or remove any discharge, spillage, emission or leakage described in (c) above. 184

### PILOTAGE AND TOWAGE

This insurance shall not be prejudiced by reason of any contract limiting in whole or in part the liability of pilots, tugs, towboats, or their owners 185
when the Assured or the agent of the Assured accepts such contract in accordance with established local practice. 186

   Where in accordance with such practice, pilotage and towage services are provided under contracts requiring the Assured or the agent of the Assured: 187
   (a)  to assume liability for damage resulting from collision of the Vessel insured with any other ship or vessel, including the towing vessel, or 188
   (b)  to indemnify those providing the pilotage or towage services against loss or liaiblity for any such damages, 189

it is agreed that amounts paid by the Assured or Surety pursuant to such assumed obligations shall be deemed payments "by way of damages to any other 190
person or persons" and to have been paid "in consequence of the Vessel being at fault" within the meaning of the Collision Liability clause in this Policy 191
to the extent that such payments would have been covered if the Vessel had been legally responsible in the absence of any agreement. Provided always 192
that in no event shall the aggregate amount of liability of the Underwriters under the Collision Liability clause, including this clause, be greater than 193
the amount of any statutory limitation of liaiblity to which owners are entitled or would be entitled if liaiblity under any contractual obligation referred to in 194
this clause were included among the liabilities subject to such statutory limitations. 195

### CHANGE OF OWNERSHIP

In the event of any change, voluntary or otherwise, in the ownership or flag of the Vessel, or if the Vessel be placed under new management, or be 196
chartered on a bareboat basis or requisitioned on that basis, or if the Classification Society of the Vessel or her class therein be changed, cancelled or 197
withdrawn, then, unless the Underwriters agree thereto in writing, this Policy shall automatically terminate at the time of such change of ownership, flag, 198
management, charter, requisition or classification; provided, however, that: 199

   (a)  if the Vessel has cargo on board and has already sailed from her loading port, or is at sea in ballast, such automatic termination shall, if   200
required, be deferred until arrival at final port of discharge if with cargo, or at port of destination if in ballast; 201
   (b)  in the event of an involuntary temporary transfer by requisition or otherwise, without the prior execution of a written agreement by the   202
Assured, such automatic termination shall occur fifteen days after such transfer. 203

This insurance shall not inure to the benefit of any transferee or charterer of the Vessel and, if a loss payable hereunder should occur between 204
the time of change or transfer and any deferred automatic termination, the Underwriters shall be subrogated to all of the rights of the Assured against 205
the transferee or charterer in respect of all or part of such loss as is recoverable from the transferee or charterer, and in the proportion which the 206
amount insured hereunder bears to the Agreed Value. 207
The term "new management" as used above refers only to the transfer of the management of the Vessel from one firm or corporation to another, 208
and it shall not apply to any internal changes within the offices of the Assured. 209

### ADDITIONAL INSURANCES

It is a condition of this Policy that no additional insurance against the risk of Total Loss of the Vessel shall be effected to operate during the cur- 210
rency of this Policy by or for account of the Assured, Owners, Managers, Operators or Mortgagees except on the interests and up to the amounts enum- 211
erated in the following Sections (a) to (g), inclusive, and no such insurance shall be subject to P.P.I., F.I.A. or other like term on any interests whatever 212
excepting those enumerated in Section (a); provided always and notwithstanding the limitation on recovery in the Assured clause a breach of this condition 213
shall not afford the Underwriters any defense to a claim by a Mortgagee who has accepted this Policy without knowledge of such breach: 214

   (a)  Disbursements, managers' commissions, Profits or Excess or Increased Value of Hull and Machinery, and/or similar inter- 215
ests however described, and freight (including chartered freight or anticipated freight) insured for time. An amount not exceeding 216
in the aggregate 25% of the Agreed Value. 218
succeeding cargo passage (such insurance to include, if required, preliminary and intermediate ballast passage) plus the charges of insur- 219
ance. In the case of a voyage charter where payment is made on a time basis, the amount shall be calculated on the estimated duration of the 220
voyage, subject to the limitation of two cargo passages as laid down herein. Any amount permitted under this Section shall be reduced, as the 221
freight or hire is earned, by the gross amount so earned. Any freight or hire to be earned under the form of Charters described in (d) below shall 222
not be permitted under this Section (b) if any part thereof is insured as permitted under said Section (d). 223
   (c)  Anticipated freight if the Vessel sails in ballast and not under charter. An amount not exceeding the anticipated gross freight 224
on next cargo passage, such amount to be reasonably estimated on the basis of the current rate of freight at time of insurance, plus the charges of 225
insurance. Provided, however, that no insurance shall be permitted by this Section if any insurance is effected as permitted under Section (b). 226
   (d)  Time charter hire or charter hire for series of voyages. An amount not exceeding 50% of the gross hire which is to be earned under 227
the charter in a period not exceeding 18 months. Any amount permitted under this Section shall be reduced as the hire is earned under the charter 228
by 50% of the gross amount so earned but, where the charter is for a period exceeding 18 months, the amount insured need not be reduced while 229
it does not exceed 50% of the gross hire still to be earned under the charter. An insurance permitted by this Section may begin on the signing 230

|  | of the charter. | 231 |
|---|---|---|
| (e) | Premiums. An amount not exceeding the actual premiums of all interest insured for a period not exceeding 12 months (excluding premiums | 232 |
|  | insured as permitted under the foregoing Sections but including, if required, the premium or estimated calls on any Protection and Indemnity or | 233 |
|  | War Risks and Strikes insurance) reducing pro rata monthly. | 234 |
| (f) | Returns of premium.  An amount not exceeding the actual returns which are recoverable subject to "and arrival" or equivalent provision under | 235 |
|  | any policy of insurance. | 236 |
| (g) | Insurance irrespective of amount against:- Risks excluded by War, Strikes and Related Exclusions clause; risks enumerated in the American | 237 |
|  | Institute War Risks and Strikes Clauses; and General Average and Salvage Disbursements. | 238 |

WAR STRIKES AND RELATED EXCLUSIONS

|  | The following conditions shall be paramount and shall supersede and nullify any contrary provisions of the Policy. | 239 |
|---|---|---|
|  | This Policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of: | 240 |
| (a) | Capture, seizure, arrest, restraint or detainment or any attempt thereat; or | 241 |
| (b) | Any taking of the Vessel, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or | 242 |
| (c) | Any mine, bomb or torpedo not carried as cargo on board the Vessel; or | 243 |
| (d) | Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or | 244 |
| (e) | Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or | 245 |
| (f) | Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military law or usurped power; or | 246 |
| (g) | Malicious acts or vandalism, unless committed by the Master or Mariners and not excluded elsewhere under this War Strikes and Related Exclu- | 247 |
|  | sions clause; or | 248 |
| (h) | Hostilities or warlike operations (whether there be a declaration of war or not) but this subparagraph (h) not to exclude collision or contact with | 249 |
|  | aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by | 250 |
|  | a hostile act by or against a belligerent power which act is independent of the nature of the voyage or service which the Vessel concerned or, in | 251 |
|  | the case of a collision, any other vessel involved therein, is performing.  As used herein, "power" includes any authority maintaining, naval, mili- | 252 |
|  | tary or air forces in association with a power. | 253 |
|  | If war risks or other risks excluded by this clause are hereafter insured by endorsement on this Policy, such endorsement shall supersede the above | 254 |

conditions only to the extent that the terms or such endorsement are inconsistent therewith and only while such endorsement remains in force

**PAGE 10**

**DONJON MARINE CO., INC., ET AL**

**AMERICAN INSTITUTE WAR RISKS AND STRIKES**

## CLAUSES (DECEMBER 1, 1977) FORM 87B-108

To be attached to and form a part of Policy No.  of the                                                                                 1
(Underwriters)                                                                                                                                    2
This insurance, subject to the exclusions set forth herein, covers only those risks which would be covered by the             3
attached Policy (including collision liability) in the absence of the WAR, STRIKES AND RELATED EXCLUSIONS clause          4
contained therein but which are excluded thereby and which risks shall be construed as also including;                         5
    1. Any mine, bomb or torpedo not carried as cargo on board the Vessel;                                                          6
    2. Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force       7
    or matter;                                                                                                                            8
    3. Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom;                                         9
    4. Strikes, lockouts, political or labor disturbances, civil commotions, riots, martial law, military or usurped power;       10
    5. Malicious acts or vandalism to the extent only that such risks are not covered by the attached Policy;                   11
    6. Hostilities or warlike operations (whether there be a declaration of war or not) but this paragraph (6) shall not       12
    include collision or contact with aircraft, rockets of similar missiles, or with any fixed or floating object, or strand-   13
    ing, heavy weather, fire or explosion unless caused directly by a hostile act by or against a belligerent power           14
    which act is independent of the nature of the voyage or service which the Vessel concerned or, in the case of            15
    a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority           16
    maintaining naval, military or air forces in association with a power.                                                     17

EXCLUSIONS
  This insurance does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence        18
of:                                                                                                                                               19
    a. Any hostile detonation of any weapon of war described above in paragraph (2);                                          20
    b. Outbreak of war (whether there be a declaration of war or not) between any of the following countries; United       21
       States of America, United Kingdom, France, the Union of Soviet Socialist Republics or the People's Republic        22
       of China;                                                                                                           23
    c. Delay or demurrage;                                                                                                   24
    d. Requisition or preemption;                                                                                            25
    e. Arrest, restraint or detainment under customs or quarantine regulations and similar arrests, restraints or detain-    26
       ments not arising from actual or impending hostilities;                                                             27
    f. Capture, seizure, arrest, restraint, detainment, or confiscation by the Government of the United States or of the     28
       country in which the Vessel is owned or registered.                                                                 29

HELD COVERED AND OTHER PROVISIONS
  The held covered clause appearing under the heading ADVENTURE in the attached Policy is deleted and the follow-         30
ing clause substituted therefore;-                                                                                                              31
  "Subject to the provisions of the Automatic Termination and Cancellation Clauses below, held covered in the              32
  event of any breach of conditions as to loading or discharging of cargo at sea, or towage or salvage activities         33
  provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the              34
  Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are                35
  agreed to by the Assured."                                                                                               36

  If at the natural expiry time of this insurance the Vessel is at sea, this insurance will be extended, provided previous    37
notice be given to the Underwriters, for an additional premium at a rate to be named by the Underwriters, until midnight        38
Local Time of the day on which the Vessel enters the next port to which she proceeds and for 24 hours thereafter, but           39
in no event shall such extension affect or postpone the operation of the Automatic Termination and Cancellation Clauses         40
below,                                                                                                                                          41

Warranted not to abandon in case of capture, seizure or detention, until after condemnation of the Property insured,           42
The provisions of the attached Policy with respect to constructive Total Loss shall apply only to claims arising from           43
physical damage to the vessel.                                                                                                                  44

AUTOMATIC TERMINATION AND CANCELLATION CLAUSES

A. This insurance and any extension thereof, unless sooner terminated by the provisions of section B or C, shall terminate      45
   automatically upon and simultaneously with the occurrence of any hostile detonation of any nuclear weapon of war           46
   as defined above,  wheresoever or whensoever such detonation may occur and whether or not the Vessel may be               47
   involved.                                                                                                                 48

B. This insurance and any extension thereof, unless sooner terminated by the provisions of section A or C, shall termi-        49
   nate automatically upon and simultaneously with the outbreak of war, whether there be a declaration of war or not,        50
   between any of the following countries: United States of America, United Kingdom, France, the Union of Soviet             51
   Socialist Republics or the People's Republic of China.                                                                    52

C. This insurance and any extension thereof, unless sooner terminated by section A or B, shall terminate automatically        53
   it and when the Vessel is requisitioned, either for title or use.                                                         54

D. This insurance and any extension thereof may be cancelled at any time at the Assured's request, or by Underwriters         55
   upon 14 days' written notice being given to the Assured, but in no event shall such cancellation affect or postpone        56
   the operation of the provisions of sections A, B or C, Written or telegraphic notice sent to the Assured at his (its)       57
   last known address shall constitute a complete notice of cancellation and such notice mailed or telegraphed to             58
   the said Assured, care of the broker who negotiated this insurance, shall have the same effect as it sent to the           59
   said Assured direct. The mailing of notice as aforesaid Shall be sufficient proof of notice and the effective date         60
   and hour of cancellation shall be 14 days from midnight Local Time of the day on which such notice was mailed or           61
   telegraphed as aforesaid. Underwriters agree, however, to reinstate this insurance subject to agreement between            62
   Underwriters and the Assured prior to the effective date and hour of such cancellation as to now rate of premium           63
   and/or conditions and/or warranties.                                                                                      64

RETURNS OF PREMIUM

The RETURNS OF PREMIUM clause of the attached Policy is deleted and the following substituted therefore:--                    65
   "In the event of an automatic termination or cancellation of this insurance under the provisions of sections               66
   A, B, C or D above, or if the vessel be sold, pro rata net return of premium will be payable to the Assured,               67
   provided always that a Total Loss of the vessel has not occurred during the currency of this Policy. In no                 68
   other event shall there be any return of premium."                                                                        69

THIS INSURANCE SHALL NOT BECOME EFFECTIVE IF, PRIOR TO THE INTENDED TIME OF ITS ATTACHMENT, THERE                             70
HAS OCCURRED ANY EVENT WHICH WOULD HAVE AUTOMATICALLY TERMINATED THIS INSURANCE UNDER THE                                     71
PROVISIONS OF SECTIONS A, B. OR C HEREOF HAD THIS INSURANCE ATTACHED PRIOR TO SUCH OCCURRENCE.                                72

## PAGE 11

## DONJON MARINE CO., INC., ET AL

## INSTITUTE RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE

This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.

1.    In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

   1.1    Ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel.

   1.2    The radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

   1.3    Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)

This insurance ( reinsurance) is subject to the Institute Radioactive Contamination Exclusion Clause 1/10/90 provided that

   If fire is an insured peril

   and

   where the subject matter insured is within the U.S.A., its islands, onshore territories or possessions

   and

   a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1 and 1.2 of the Institute Radioactive Contamination Exclusion Clause 1/10/90.

   any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss, damage, liability, or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

All other terms and conditions remain unchanged.

Attached to and forming part of Policy No. **As Attached** of the **As Attached.**

_____

Authorized Representative

# SCHEDULE OF VESSELS

| VESSEL | VALUATION INSURED | SUM INSURED | RATE | PREMIUM | DEDUCTIBLE |
|---|---|---|---|---|---|
| Dredge "J.P. BOISSEAU" | | | | | |
| Tug "USNS POWHATAN" | | | | | |
| ***Tug "NARRAGANSETT" | | | | | |
| Tug "ATLANTIC SALVOR" | | | | | |
| Crane Barge "CHESAPEAKE 1000" | | | | | |
| **Dredge w/ Crane "DELAWARE BAY" | | | | | |
| Dump Scow "WITTE 4001" | | | | | |
| Dump Scow "WITTE 4002" | | | | | |
| Crane Barge "COLUMBIA NEW YORK" | | | | | |
| Dredge " MICHIGAN" | | | | | |
| Tug "KENDALL P. BRAKE" | | | | | |
| Tug "MARY ALICE" | | | | | |
| Crane Barge "FARRELL 256" | | | | | |
| Dredge "NEWARK BAY" | | | | | |
| Tug "PAUL ANDREW" | | | | | |
| Hopper Barge "WITTE 3003" | | | | | |
| Hopper Barge "WITTE 3004" | | | | | |
| Hopper Scow "WITTE 3001" | | | | | |
| Hopper Scow "WITTE 3002" | | | | | |
| Deck Barge "WITTE 106" | | | | | |
| Derrick Barge w/ Crane "RARITAN BAY" | | | | | |
| Hopper Scow "WITTE 2001" | | | | | |
| Hopper Scow "WITTE 2002" | | | | | |
| Hopper Scow "WITTE 2003" | | | | | |
| Hopper Scow "WITTE 2004" | | | | | |
| Hopper Barge "WITTE 1803" | | | | | |

## SCHEDULE OF VESSELS

| VESSEL | VALUATION | SUM INSURED | RATE | PREMIUM | DEDUCTIBLE |
|--------|-----------|-------------|------|---------|------------|
| Hopper Barge "WITTE 1804" | | | | | |
| Hopper Scow "WITTE 1801" | | | | | |
| Hopper Scow "WITTE 1802" | | | | | |
| Crew Boat "MATTHEW SCOTT" | | | | | |
| Office Barge "CLARENCE E. SMITH" | | | | | |
| Tug "WILLIAM E" | $150,000 | $150,000 | 1.40% | 2,100.00 | $5,000 |
| Carfloat "NO. 30" | | | | | |
| Launch "BERGEN POINT" | | | | | |
| Tug "SUSAN WITTE" | | | | | |
| Crane Barge "EASTCHESTER BAY" | | | | | |
| Dive Barge "308" | | | | | |
| Storage Barge "310" | | | | | |
| Deck Barge "DJ 440" | | | | | |
| Deck Barge "DJ 441" | | | | | |
| D.O.T. Deck Scow | | | | | |
| Launch "GREENBAY" | | | | | |
| Launch "MONARCH 3" | | | | | |
| | | | | | |
| TOTAL | | | | | |
| | | | | | |

**Each vessels to be considered as if separately insured.**

**\*\*Port Risk**
**\*\*\*Collision and towers liability only**