James E. Mercante (JM 4231)
Michael E. Stern (MS 9113)
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue
New York, NY 10017
(212) 953-2381
Attorneys for Petitioner
DONJON MARINE CO., INC.
As owner of Tug WILLIAM E.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                 07 civ 3840 (RWS)
IN THE MATTER OF THE COMPLAINT

        of

DONJON MARINE CO., INC. as owner of Tug
WILLIAM E. for Exoneration from or Limitation
of Liability,

        Petitioner.

---

## DONJON MARINE CO., INC.'S
## REPLY MEMORANDUM OF LAW

Of Counsel:

James E. Mercante (JM 4231)
Michael E. Stern  (MS 9113)

        RUBIN, FIORELLA & FRIEDMAN LLP
        292 Madison Avenue, 11th Floor
        New York, NY 10017
        212-953-2381
        Attorneys for Petitioner
        Donjon Marine Co, Inc.

## **PRELIMINARY STATEMENT**

Plaintiff has not raised a single issue of material fact in opposition to Donjon Marine's motion for summary judgment  In fact, it is conceded in Kirby's response to the Local Rule 56.1 Statement that:

(i) Kirby fell from a ladder owned by his employer, Caddell Dry Dock (not the vessel owner), and

(ii) The ladder was located on the dry dock, not aboard the Tug WILLIAM E.

Indeed, plaintiff admits virtually every fact set forth in Donjon Marine's Local Rule 56.1 Statement. The only statement plaintiff denies is that "Donjon Marine did not supervise any of the work" plaintiff performed. (Kirby's Response to Donjon Marine's Local Rule 56.1 Statement ¶7). However, Kirby merely speculates that Donjon Marine may have "observed" his work. (Kirby Affidavit at ¶¶ 8, 12). In this regard, Kirby opines that on the morning of the accident, he saw "two or three Caucasian men" walking in the dry dock who *"were not Caddell employees"* and he believed they worked on the tugboat. (*Id.* at ¶ 8). This statement by Kirby falls far short of creating a genuine issue of fact.

Accordingly, the undisputed facts demonstrate that Donjon Marine did not owe a duty to plaintiff and, thus, did not breach the duties of a vessel owner announced in *Scindia*.

In a cross-motion, Kirby now seeks to add a federal cause of action under the Longshore and Harbor Workers' Compensation Act (LHWCA). Tellingly, however, Kirby does not add new factual allegations sufficient to support a claim under the LHWCA. Thus, Kirby's cross-motion should be dismissed as futile.

## POINT I

## FEDERAL PREEMPTION
## IS SETTLED LAW

The LHWCA preempts state law claims and provides plaintiff's *exclusive remedy* against the vessel owner, Donjon Marine. *See* Gravatt v. City of New York, 1998 WL 171491 (S.D.N.Y. Apr. 10, 1998) (Sweet, D.J.). Kirby disputes this well-established proposition by reliance on two federal cases, both of which are clearly distinguishable. *See* O'Hara v. Weeks Marine, Inc., 294 F.3d 55 (2d Cir. 2002); McAllister v. G& S Investors, 358 F. Supp.2d 146 (E.D.N.Y. 2005).

Kirby relies on O'Hara for the proposition that claims under Labor Law § 200 and 241 are not preempted and may be asserted against a vessel owner who "has actual or constructive notice of a hazard and fails to protect workers from that hazard." *Id.* at 69. Review of this case, however, demonstrates that neither the Court of Appeals nor the district court held that state law claims are not preempted. Indeed, this issue was not raised and Kirby relies on *dicta*. In O'Hara, the plaintiff/dockworker injured while working *on board* a barge owned by Weeks Marine as a result of non-functioning equipment on the barge, sued Weeks Marine under the "Jones Act" and the LHWCA, and later (almost 13 years after the accident) moved to amend the complaint to add state labor law claims. The Court of Appeals held simply that it could not determine on what basis the district court denied the plaintiff leave to amend his complaint and remanded this issue for further proceedings. Importantly, the district court ultimately denied plaintiff leave to plead state law claims. *See* Exhibit 1; Memorandum and Order dated September 14, 2004, attached hereto.

Kirby relies on McAllister for the proposition that there is no direct conflict between the LHWCA and Labor Law § 240 and that a special jury verdict form can ameliorate any difference in

factual findings necessary to find liability. In McAllister, the plaintiff/dock builder was injured on a float stage during a port reconstruction project and sued the owner of the float stage, the general contractors, developers and owners of the port reconstruction project under Labor Law § 240. The plaintiff then moved for summary judgment on his Labor Law claims against the landowner/contractor defendants, **not** against the owner of the vessel. See Exhibit 2; Plaintiffs' Notice of Motion and excerpts of Reply Memorandum submitted in that case, attached hereto. Thus, the court in McCallister did not hold, as Kirby claims, that state labor law claims are not preempted by the LHWCA as against a vessel owner. To the contrary, the holding was that state law claims are not preempted against land owners or contractors.

Kirby's reliance on Cammon v. City of New York, 95 N.Y.2d 583 (2000); Songui v. City of New York, 770 N.Y.S.2d 103 (2d Dept. 2003); and Aguilar v. Henry Marine Service, Inc., 785 N.Y.S.2d 95 (2d Dept. 2004) to support his position on preemption is misplaced. As this Court has held, "**[p]reemption is an issue of federal law and this Court is not bound by state court decisions**." Gravatt v. City of New York, 1998 WL 171491 at *13 (S.D.N.Y. Apr. 10, 1998). (emphasis added).

Interestingly, Kirby seems to suggest that his state law claims are not *preempted* because they have merit under state law. But, since state labor law is *preempted* by the LHWCA, it is irrelevant whether Kirby's claims would have merit under state labor law.[1]

In the light of the foregoing, Kirby's state law negligence and Labor Law claims are

---

[1] Kirby relies on numerous state labor law cases to contend that the state law claims have merit. See e.g. Russin v. Louis N. Picciano & Son, 54 N.Y.2d 311 (1981); Ross v. Curtis-Palmer Hyrdo-Elec. Co., 81 N.Y.2d 494; Chaffee v. Union Dry Dock Co., 68 AD2d 578 (4th Dept. 1902). These cases deal with issues under state labor law, and, therefore, have no bearing on the preemption analysis.

preempted by federal law.

## POINT II

### THERE ARE NO FACTS SUPPORTING NEGLIGENCE

Plaintiff now concedes that he fell while sandblasting because *his employer*, Caddell Dry Dock, failed to provide him with a safe work place on Caddell Dry Dock's premises, and Caddell's "directed" and "required" him to perform his work in a "precarious manner". *See* Affidavit of Dennis Kirby at ¶¶ 11 - 12; Kirby's Opposition Memorandum at 9. Indeed, Kirby affirms that he was "taught" how to sandblast by his supervisor at Caddell, "Jim Mullusky" (¶5); that it was Caddell's ladder (¶4); and that he was <u>not</u> on the tugboat when he fell off the ladder (¶6). Notably, plaintiff got "on and off the ladder two or three times before the accident." (¶7). These facts are not in dispute.

### *Donjon Marine Did Not Breach the "Turnover" Duty*

Plaintiff fails to adequately address the duties of a vessel owner under <u>Scindia</u>. Plaintiff does not oppose at all, and therefore concedes, that Donjon Marine turned its vessel over to Caddell Dry Dock in a safe condition for the shipyard work. As such, it is undisputed that Donjon Marine did *not* breach the "turnover duty".

### *Donjon Marine Did Not Breach The Duty to Intervene*

The LHWCA requires the stevedore (the longshoreman's employer) not the vessel owner, to provide a "reasonably safe" place to work and to take such safeguards with respect to equipment and working conditions to avoid injury to longshoremen. 33 U.S.C. § 941. The vessel owner is entitled to rely on its contractor to avoid exposing longshoremen to unreasonable hazards. <u>Scindia</u>, 451 U.S. at 170. Donjon Marine did not have a duty to take steps to correct a supposed unsafe work

Page 4 of 11

condition that may develop during the contracted for operations, particularly off the vessel. This would result in holding the vessel owner "solely liable for conditions that are attributable to the stevedore, rather than the ship . . . [which is] precisely the sort of non-delegable duty that Congress sought to eliminate" in section 905(b). *Id.* at 169.

Here, Kirby avers that while he was sandblasting from a ladder located on Caddell Dry Dock's facility, a "*strong wind blowing against me*" combined with the "*backward force of the sandblasting hose caused the ladder to tip over to the right*". See Kirby Affidavit at ¶9. Importantly, Kirby does not allege that he was caused to fall due to any defect or unsafe condition of the tugboat or her equipment. For these reasons, Donjon Marine did not owe plaintiff the Scindia "duty to intervene" which arises only if, among other factors, a condition of the "*vessel or her equipment poses an unreasonable risk of harm.*" See In the Matter of the Complaint of James Miller Marine Service, Inc., 2003 A.M.C. 1777, 1783 (S.D.N.Y. June 17, 2003).

Plaintiff's reliance on O'Hara, 294 F.3d 55 (2d Cir. 2002) and Gravatt v. City of New York, 226 F.3d 108, 121 (2nd Cir. 2000) for the proposition that a vessel owner's duty to intervene arises upon actual knowledge of a "dangerous condition" on the work site, is misplaced. Those cases hold, consistent with Scindia, that the "dangerous condition" alleged must be as to a "condition of the vessel or its equipment". O'Hara, 294 F.3d at 65; Gravatt, 226 F.3d at 121.

Accordingly, plaintiff's claim that Donjon Marine breached the "duty to intervene", asserted for the first time in his opposition memorandum, fails as a matter of law.

***Donjon Marine Did Not Breach The "Active Control Duty"***

Plaintiff seeks to create the existence of a genuine issue with regard to Donjon Marine's alleged exercise of "active control" over the work based solely on counsel's speculation in the

memorandum of law. Opposition Brief at p. 9. *See* Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F.Supp2d 569 (S.D.N.Y. 2004) (holding that attorney's affidavit is insufficient to create an issue of fact and it "does not do the trick"). No such allegations are contained in Kirby's affidavit or in any other form of admissible evidence. Indeed, Kirby only suggests that on the morning of the accident, he "*saw two or three Caucasian men*" walking in the dry dock who "*were not Caddell employees*" and he believed they worked on the tugboat. *See* Affidavit of Dennis Kirby at ¶ 12. It is axiomatic that purely conclusory allegations" are insufficient to defeat a summary judgment motion. *See* Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F.3d 60, 63 (2d Cir. 2003).

Indeed, the undisputed admissible evidence establishes that Caddell Dry Dock, not Donjon Marine, exercised "active control" over the work performed by plaintiff:

> "I was told by Elliott Pressley, a Caddell painter, to get the ladder and start sandblasting" (Affidavit of Dennis Kirby at ¶ 4);
>
> "Name of Supervisor at time of accident - Jimmy - supervisor" (Exhibit 6, Employee's Claim for Compensation)[2];
>
> "James Mullusky, a Caddell Dry Dock employee, was Dennis Kirby's supervisor" (Affidavit of Steve Kalil, Caddell Dry Dock's president, at ¶ 9);
>
> Donjon Marine engaged Caddell Dry Dock to "provide certain work, labor, painting, renovation and/or repairs . . . of its vessel" (Exhibit 2, Verified Complaint at ¶ 16).

Plaintiff asserts that Donjon Marine did not submit an affidavit addressing the issue of "active control". However, plaintiff overlooked, and failed to rebut, the affidavit submitted by Donjon Marine with its moving papers, of Steve Kalil, president of Caddell Dry Dock, who confirms that Kirby's *supervisor* was "James Mullusky, a *Caddell Dry Dock* employee."

Donjon Marine does not contest that tug crew members were on the tug WILLIAM E at

---

[2] "Jimmy" is Caddell Dry Dock employee James Mullusky, plaintiff's supervisor.

various times. It is described in the Declaration of Gordon Keen, captain of the tug WILLIAM E, that three crew members were on the tug performing maintenance inside the tug on its main engines and auxiliary mechanical systems. *See* Declaration of Gordon Keen at ¶ 3, attached. The tug crew had no interaction with Caddell Dry Dock's employees on the work they were hired to perform. *Id.* at ¶ 4.[3]

Plaintiff has raised no triable issue of fact as to the <u>Scindia</u> "active control" duty. Instead, plaintiff in large part simply restates the allegations of negligence raised in his pleadings, which is insufficient to establish a triable issue and defeat a motion for summary judgment. *See* Fed.R.Civ.P. 56 (e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading.")

## POINT III

## DONJON MARINE IS ENTITLED TO EXONERATION UNDER ADMIRALTY LAW

The Limitation of Liability Act (46 U.S.C. § 30501 *et seq*) entitles a vessel owner to *exoneration* from liability if a claimant fails to establish that injury was caused by negligence. As

---

[3] Likewise, plaintiff's mention of no witness depositions having occurred is specious. Kirby's Notice of Deposition (Exhibit C to Kirby's papers) was improper in several respects. First, the Notice requested depositions on *November 27, 2007*, but was not in this office until about *November 21, 2007*. Second, it did not properly identify who was to be deposed, seeking that Donjon Marine produce: "*Each and every corporate officer, engineer, vessel officer, crew member and each and every other employee of Donjon Marine Co., Inc. who was present at Caddell Dry Dock from the time the vessel was first delivered to Caddell Dry Dock through and including the date of the accident.*" Based on these deficiencies in the Notice, counsel for Kirby *agreed in a telephone conference* to adjourn the deposition and plaintiff never sought to reschedule the depositions.

discussed above, Kirby has not introduced any facts bearing on Donjon Marine's negligence. Rather, in his opposition to Donjon Marine's motion seeking exoneration Kirby merely claims that he has *alleged* in the complaint that he was injured due to negligence. To defeat the vessel owner's entitlement to exoneration, however, Kirby must do more than *allege* negligence in his pleadings, he must provide admissible and credible facts of a *prima facie* case of negligence. There are no such facts.

Accordingly, Donjon Marine is entitled to exoneration from liability as a matter of federal maritime law.

## POINT IV

### DONJON MARINE IS ENTITLED TO LIMIT LIABILITY UNDER ADMIRALTY LAW

The Limitation of Liability Act permits the shipowner, in the alternative, to limit its liability to the value of the vessel, "*provided that the events or circumstances giving rise to the damage occurred without the vessel owner's privity or knowledge*". Kirby mistakenly believes that a tug crew member's supposed knowledge of the alleged negligence of Caddell Dry Dock establishes vessel owner *privity or knowledge*. Plaintiff cites no case to support such a stretch of the Limitation Act. In order for negligence to be considered within the *privity or knowledge* of a vessel owner to defeat limitation, the negligence would have to have been that of management level employees. *See e.g.* Helenic Lines, Ltd. v. Prudential Lines, Inc., 72 F.2d 159 (3rd Cir. 1984); Cupit v. McLanahan Contractors, 1 F.3d 346 (5th Cir. 1993) (Knowledge of members of a vessel's crew is not imputed to a corporate owner). Kirby has not introduced facts to establish vessel owner negligence or *privity or knowledge* of any management level employee in the "events or circumstances giving rise to the

damage".[4]

Accordingly, if not entitled to exoneration, Donjon Marine is entitled to limit its liability to the fair market value of the tugboat on the date of the alleged accident, i.e., $95,000.

Kirby argues that this $95,000 is insufficient as a limitation fund. If Kirby wishes to challenge the adequacy of the *Ad Interim* Stipulation of Value/Letter of Undertaking, he must file a motion with the Court for such relief. *See* Order Restraining Suits ("the Court only upon *motion* and good cause shown, shall cause appraisement of the value of the Vessel and may thereupon, order said security increased or reduced if it finds the amount thereof insufficient or excessive"); Supplemental Rules for Admiralty or Maritime Claims R. F (7).

What's more, plaintiff fails to appreciate that the value of the tug for purposes of limitation is taken as of the date of the accident, not after all repairs are made. The fair market value on the date of the alleged accident was $95,000. *See* Certificate of Market Valuation attached to the Limitation Petition.

## POINT V

### KIRBY'S CROSS MOTION TO AMEND MUST BE DENIED

Kirby seeks leave to amend to add claims under the LHWCA. This motion has no merit. While leave to amend is generally freely given, leave should not be granted where, as here, the

---

[4] Kirby asserts that Donjon Marine failed to respond to a document demand seeking a document listing all employees on the tug during the work performed at Caddell Dry Dock together with personal information. *See* Donjon Marine's Response to Document Request 15. No such document exists and Donjon Marine is not obligated under federal discovery rules to create such a document.

proposed amendments are futile. *See* Azurite Corp. Ltd. v. Amster & Co., 52 F.3d 15 (2d Cir. 1995). Indeed, in his proposed amended Claim, Kirby merely adds a citation to the LHWCA (*see* ¶8) but not any different or additional *facts* to support a claim under the LHWCA against Donjon Marine.

Thus, even if Kirby is given a second bite at the apple, he will once again rely on the same "facts" which do not state a claim under the LHWCA as established in this motion, and on which Donjon Marine is entitled to summary judgment.

Finally, plaintiff is disingenuous in now asserting that he has essentially alleged claims against Donjon Marine under the federal LHWCA. Indeed, in Kirby's own answer to the Limitation of Liability petition, he alleges as an affirmative defense that the substantive law of the State of New York applies. *See* Kirby's Claim & Answer, Affirmative Defense 2.

## CONCLUSION

For the reasons set forth herein, there are no genuine issues of material fact present in this case warranting a trial. Plaintiff's state law claims are preempted by the federal Longshore and Harbor Workers' Compensation Act. Moreover, Donjon Marine did not breach any duty it may have owed to plaintiff under that Act. Similarly, Donjon Marine has established that it is entitled to exoneration from liability under federal admiralty law. Accordingly, as a matter of law, plaintiff's complaint should be dismissed.

Finally, Kirby's cross-motion to amend his complaint should be denied as futile.

Dated: January 24, 2008

        RUBIN, FIORELLA & FRIEDMAN LLP
        Attorneys for Petitioner
        DONJON MARINE CO., INC.
        By: _____
        James E. Mercante (JM 4231)
        Michael E. Stern (MS 9113)
        292 Madison Avenue, 11th Floor
        New York, New York 10017
        212 953-2381
        Our File No. 609-8731