# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
GERARD O'HARA and
LISA O'HARA,

                Plaintiffs,

   -against-                                 MEMORANDUM AND ORDER
                                            94 CV 4322 (ILG)
WEEKS MARINE, INC.,

                Defendant.
------------------------------------------------x
GLASSER, United States District Judge:

     The Plaintiffs have moved this Court for an Order that would permit them to amend their complaint to assert new causes of action and to assert diversity of jurisdiction which would lend viability to their demand for a jury trial. It is important to note that this action was commenced on September 14, 1994, and this motion to amend and for a jury trial was filed on September 3, 2004, nearly ten years later and three weeks before September 24, 2004, when this trial is scheduled to commence.

## Background

     The Plaintiffs, Gerald O'Hara and his wife Lisa, commenced this action in 1994, pursuant to the Jones Act, 46 U.S.C. App. § 688 *et. seq.*, the general maritime law and the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et. seq.*, seeking recovery for injuries sustained by Gerald while performing work at the Staten Island Ferry Pier on September 17, 1991. On that date, Gerald was employed by Collazo Contractors (named as a co-defendant initially and subsequently dismissed), a subcontractor of defendant Weeks, engaged in rebuilding, restoring and repairing the stone bulkheads and timber piles on the Staten Island wharfs.

Weeks thereafter moved for summary judgment on the Jones Act claim on the ground that Gerald was not a "seaman" on a "vessel in navigation" required for recovery under that Act. In a Memorandum and Order dictated by the then recently decided Tonnesen v. Yonkers Contracting Co., Inc., 82 F.3d 30 (2d Cir. 1996), Weeks' motion was granted and the Plaintiffs' Jones Act claim was dismissed. O'Hara v. Weeks Marine, Inc., 925 F. Supp. 257 (E.D.N.Y. 1996).

Following that determination, the Defendant moved for summary judgment on the Plaintiffs' remaining claim under the LHWCA. In a Memorandum and Order reported in 1999 WL 1129620 (E.D.N.Y. 1999), familiarity with which is assumed, the Defendant's motion was granted and the LHWCA claim was dismissed. The Plaintiffs, in their memorandum of law argued that Weeks was liable to them under the N.Y. Labor Law § § 200 and 241(6), and requested to amend their complaint accordingly. Their request was denied and no determination was made as to its viability in a state court. An action brought by the Plaintiffs in the Supreme Court of New York, New York County, seeking recovery by reason of Defendant's negligence, was also dismissed on the Defendant's motion on February 14, 2001.

The Plaintiffs appealed the dismissal of their LHWCA claim and the Court of Appeals for the Second Circuit, affirming the dismissal of the Jones Act claim, vacated this Court's grant of summary judgment to Weeks on the O'Haras' LHWCA claims and its denial of their motion to amend the complaint to assert state law claims against Weeks and remanded the matter to this Court for further proceedings. O'Hara v. Weeks Marine, Inc., 294 F. 3d 55 (2d Cir. 2002).

2

That recitation of the background of this 10 year old action brings us to this motion by the Plaintiffs seeking an order that would permit an amendment of the complaint to (1) "allege a violation of the New York Labor Law and so as to allege diversity of citizenship," and (2) "to have the Court grant a jury trial."

<u>Discussion</u>

The Motion to Amend the Complaint

    1. The Labor Law Claim

Reference has previously been made of the denial of the Plaintiffs' request to amend their complaint in my Memorandum and Order reported in 1999 WL 129620 (E.D.N.Y. 1999). Although stating that the claim was not before me and that I was making no determination as to its viability in state court, I did make the observation that any claim under that statute would be barred by the three year statute of limitations. <u>See</u> N.Y. C.P.L.R. § 214(5) (action to recover damages for personal injury under the Labor Law governed by three year statute of limitations); <u>see</u> also 46 U.S.C. § 763a ("unless otherwise specified by law, a suit for recovery of damages for personal injury ... arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued).

As is indicated above, a state court action was commenced and dismissed for the same reason. <u>O'Hara v. Weeks Marine, Inc.</u>, Index No. 102278/99 (S. Ct. N.Y. Co. Feb. 14, 2001). In remanding this case to this Court for it to consider whether O'Hara should be granted leave to add claims under the New York Labor Law, no mention is made of the dismissal of that claim by the State Supreme Court on February 14, 2001, and it can only be assumed that the Court of Appeals was not aware of it

3

although the appeal was argued one month later, on March 15, 2001.[1]

Against this background, the Full Faith and Credit Clause of the Constitution, U.S. Const. Art. IV, § 1, and its implementing statute, 28 U.S.C. § 1738, require this Court to recognize and give effect to the State Supreme Court judgment which decided and dismissed Plaintiffs' Labor Law claims on the merits. See Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986) ("[u]nder the full faith and credit act a federal court must give the same preclusive effect to a state court judgment as another court of that state would give"); Ackerman v. Levine, 788 F.2d 830, 842 (2d Cir. 1986) (same). There is no exception to this rule. Having had their bite at the apple in state court on their claims under the Labor Law, Plaintiffs are not permitted a second chance to re-file those same claims in this Court. See La Ruffa v. Smith, 148 A.D.2d 885, 887, 539 N.Y.S.2d 520, 521 (4th Dep't 1989) ("Once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy") (citing O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688, 429 N.E.2d 1158 (1981)).

Plaintiffs' motion to amend the complaint to add a Labor Law claim also fails for an altogether different reason. The incident giving rise to this case occurred on September 17, 1991, nearly thirteen years before Plaintiffs filed this motion. Plaintiffs' Labor Law claims are therefore barred as untimely under the applicable statute of

---

[1] At oral argument on Plaintiffs' motion on Friday, September 10, 2004, neither party offered an explanation why they did not bring the State Supreme Court judgment to the attention of the Court of Appeals.

4

limitations and thus Plaintiffs' proposed amendment is denied as futile. See, e.g., Perlmutter Printing Co. v. Bermuda Star Line, Inc., 1995 WL 144105, at * 1 (S.D.N.Y. Mar. 30, 1995).

For all of the foregoing reasons, Plaintiffs' motion to amend the complaint to add a Labor Law claim is denied.

2. Diversity Jurisdiction and Request for a Jury Trial

Plaintiffs seek to amend the complaint and allege diversity jurisdiction for the purpose of having this case tried before a jury, and not this Court. See American Home Ass. Co. v. Merck & Co., Inc., 2004 WL 1774247, at * 3 (S.D.N.Y. Aug. 5, 2004) ("the only substantive difference between admiralty and diversity jurisdiction is the availability of a jury trial"). According to their motion papers, Plaintiffs moved their residency from New Jersey in August, 2003 to South Carolina and they thus claim that the parties are now diverse. (Pl. Aff. ¶¶ 1-5). Plaintiffs offer no explanation why they waited more than 13 months from the time the parties purportedly became diverse to seek leave to amend their complaint on the eve of trial.

Under Fed. R. Civ. P. 15(a), a party must obtain permission from the district court for leave to amend its complaint unless the opposing party consents to the proposed amendment. Whether to grant leave to amend is within the discretion of this Court. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971). Particularly relevant to Plaintiffs' application is the following that the Second Circuit wrote in its remand at 294 F. 3d 70:

> '[C]onsiderations of undue delay . . . and
> prejudice to the opposing party [are]
> touchstones of a district court's discretionary

5

> authority to deny leave to amend.' *Barrows v. Forest Labs., Inc.* 742 F.2d 54, 58 (2d Cir. 1984) (footnote omitted); *see also Ansam Assocs. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (observing that amendments tend to be 'especially prejudicial' when discovery has been completed and a motion for summary judgment filed). But decisions to grant or deny leave to amend remain within 'the sound discretion of the trial court,' *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 87 (2d Cir. 1998). The district court may wish to consider this further upon remand.

Here, this Court finds that the motion for leave to amend was made after inordinate delay and would be prejudicial to Defendant. Plaintiffs have filed this motion to assert diversity jurisdiction more than one year after Plaintiffs purportedly changed their residence from New Jersey to South Carolina and almost ten years after the filing of the complaint. Moreover, the Plaintiffs were advised that they might attempt to amend their complaint since the Second Circuit issued its opinion in this case on April 1, 2002, but failed to do so until only 21 days before the trial of this ten year old case was to commence.

The Second Circuit has instructed that where considerable time has elapsed between the filing of the complaint and the motion to amend, the moving party bears the burden to provide a satisfactory and valid explanation for the delay. <u>Evans v. Syracuse City Sch. Dist.</u>, 704 F.2d 44, 46-48 (2d Cir. 1983). Here, Plaintiffs have failed to offer any reason for the delay, let alone a legally recognized one.[2]

---

[2] At oral argument, when asked why Plaintiffs sought another basis for federal jurisdiction when one already existed, Plaintiffs' counsel candidly replied "to get a jury trial." Thus, through this motion, Plaintiffs seek an improper strategic advantage on the eve of trial.

6

Having found both undue delay and failure to explain the delay, I also find that Defendant will suffer undue prejudice if I were to grant Plaintiffs' motion. Prejudice occurs if "the opposing party would experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant." See, e.g., Henry v. Murphy, 2002 WL 24307, at * 2 (S.D.N.Y. Jan. 8, 2002). Since this Court dismissed Plaintiffs' claims under the Jones Act in 1996, it has exercised maritime jurisdiction over this action under 28 U.S.C. § 1333, and nothing else. As such, the Defendant (and Plaintiffs) knew that the case would be tried to the Court on Plaintiffs' remaining claim for more than eight years leading up to this application filed belatedly just three weeks before trial. See generally Bynum v. Patterson Truck Lines, Inc., 655 F.2d 643, 644 (5th Cir. 1981) ("federal jurisdiction of Section 905(b) claims is based upon general maritime law, 28 U.S.C. § 1333(1) ... and, accordingly, assertion in federal court of a Section 905(b) claim [under the LHWCA] confers no more right to a jury trial than does any other claim asserted in federal court by reason of its maritime jurisdiction"). To permit the Plaintiffs to now shift course and grant their motion for a jury trial in the face of such prolonged reliance and trial preparation would plainly be unfair and prejudicial to Defendant. Cf. Hamilton v. Unicoolship, Ltd., 2002 WL 44139, at * 3 (S.D.N.Y. Jan. 11, 2002) (where plaintiffs brought a maritime claim and a claim in law entitling them to a jury, the plaintiffs "might not be entitled to a jury trial if the plaintiffs changed their minds as to the jurisdictional basis of their complaints in the midst of litigation") (citing Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1054 (9th Cir. 1997)).

Moreover, if I granted Plaintiffs' motion, it would cause prejudice to the efficient administration of justice. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d

7

Cir. 1993) (district courts should determine whether allowing amendment of complaint would significantly delay the resolution of the case). Trial is scheduled to begin in this matter on September 24, 2004. I would certainly have to adjourn the trial date in this ten year old case were I to permit Plaintiffs to amend the complaint and assert diversity jurisdiction to determine whether diversity actually exists.[3] Simply put, this Court and the parties have waited long enough to get to trial and further delay is not justified here.

In support of their motion to amend the complaint to assert diversity jurisdiction, Plaintiffs rely principally on two cases, Mazzella v. Pan Oceanica A/S Panama, 232 F. Supp. 29 (S.D.N.Y. 1964) and Williams v. Dow Chem. Co., 2004 WL 169746 (S.D.N.Y. Jan. 28, 2004). Both of those cases are distinguishable and do not support the grant of Plaintiffs' motion.

In Mazzella, the plaintiff, a longshoremen, brought a claim in admiralty against an alien corporation. Id. at 30. The complaint asserted both diversity and admiralty jurisdiction. Id. In the complaint, the plaintiff alleged he was a United States citizen and resident of New York State. Id. at 31. However, at his deposition, he testified that he became a citizen of the United States more than one year after the complaint was filed. Id. The plaintiff then made a motion for an order amending the incorrect allegation of citizenship set forth in the complaint. Id. The court in Mazzella granted

---

[3] In its opposition papers, Defendant argues that Plaintiffs have not, in fact, changed their residency from New Jersey to South Carolina, and thus diversity does not exist between the parties. To resolve this dispute between the parties would not be a matter of merely receiving affidavits; it requires the use of full-blown trial procedures. See Fed. R. Civ. P. 12(d); Gunsch v. Watson, 2001 WL 99844, at * 1 (S.D.N.Y. Feb. 7, 2001) (granting parties thirty days to conduct discovery on issue of diversity in anticipation of evidentiary hearing).

8

the plaintiff's motion to amend the complaint to cure the inaccuracy in it because, in relevant part, when the plaintiff filed his note of issue "after the facts as to plaintiff's citizenship were known," the defendant did not object to the plaintiff's demand for a jury trial. Id. at 32. Moreover, the plaintiff "acquired United States citizenship prior to the time issue was joined in th[e] action." Id.

In contrast to the facts in Mazzella, the Plaintiffs here filed their demand for a jury trial after a long and unexplained delay, on the eve of trial and against Defendant's objections. Moreover, unlike the plaintiff in Mazzella, the Plaintiffs in this case did not assert diversity jurisdiction in the complaint. Thus, while the defendant in Mazzella appeared to suffer little or no prejudice as a result of the filing of the amended complaint, the Defendant here, as set forth above, would suffer undue prejudice if Plaintiffs were allowed to amend their complaint at this late stage of the case.[4]

---

[4] Courts in this judicial district have allowed parties to amend their complaint early in a proceeding where the proposed amendment would not cause the defendant undue prejudice but where it would allow plaintiff to gain the benefit of a jury trial. This fact pattern is inapposite here. For example, in Island Queen Steamboat Co. v. Shearson Lehman Bros., 1988 WL 159164, at *1 (S.D.N.Y. Aug. 29, 1988), the plaintiff identified its claim in the complaint as an admiralty claim within the meaning of Fed. R. Civ. P. 9(h). Courts have held that a party is precluded from gaining a jury trial even where the parties are diverse if the plaintiff has specifically invoked the court's admiralty jurisdiction pursuant to Fed. R. Civ. P. 9(h). Id. In Island Queen Steamboat, the court granted the plaintiff's motion to amend the complaint to delete its election to proceed in admiralty because, unlike in the present case, the complaint specifically alleged diversity jurisdiction. Id. Moreover, unlike the Plaintiffs here, the plaintiff in Island Queen Steamboat moved "to amend early in the action, after only service of the complaint and answer," and the proposed amendment was not a result of bad faith or dilatory motive on the part of the plaintiff. Id. at * 3. See also Hamilton, supra, 2002 WL 44139, at * 3 (granting the plaintiffs' motion to amend their complaint to replead admiralty claims to invoke solely the court's diversity jurisdiction so the plaintiffs may gain jury trial right where diversity jurisdiction was pled in the original complaint and the motion to amend was filed early in the case).

9

Further, Plaintiffs' reliance on <u>Williams v. Dow Chem. Co.</u>, 326 F. Supp. 2d 443, 44-47 (S.D.N.Y. 2004), is misplaced. In that case, the court decided the issue whether plaintiffs, who initially filed a class action lawsuit against a defendant premised exclusively on diversity of citizenship, and later abandoned that assertion of the Court's jurisdiction, could reassert the Court's diversity jurisdiction subsequently. That issue is clearly not relevant to, or presented by, Plaintiffs' motion.

It is worth noting that Plaintiffs' motion for leave to assert diversity jurisdiction flies in the face of the well established principle which the United States Supreme Court recently reaffirmed, namely that "a court's subject matter jurisdiction cannot be expanded to account for the parties' litigation conduct." <u>Kontrick v. Ryan</u>, 124 S. Ct. 906, 916 (2004). This general rule holds that a party may not allege diversity jurisdiction following the filing of the complaint as Plaintiffs seek to do here. See <u>Dole Food Co. v. Patrickson</u>, 123 S. Ct. 1655, 1661 (2003) (federal diversity jurisdiction depends on citizenship of parties at time suit was filed); <u>Wolde-Meskel v. Vocational Instruction Project Community Servs, Inc.</u>, 166 F.3d 59, 62-63 (2d Cir. 1999) (same).

Although Plaintiffs are correct that defective allegations of jurisdiction in diversity may be amended pursuant to 28 U.S.C. § 1653, see <u>Simmons v. Rosenberg</u>, 572 F. Supp. 823, 825 (E.D.N.Y. 1987), Plaintiffs never asserted that the parties were diverse in the complaint and did not do so until the filing of this motion. Moreover, Plaintiffs' assertion that they are entitled to amend their complaint to assert diversity jurisdiction under 28 U.S.C. § 1653 finds no support in the law. The Supreme Court has held that, consistent with the principles described above, 28 U.S.C. § 1653 cannot be used to create jurisdiction retroactively if it did not exist at the time when the complaint was filed.

Newman-Green, Inc. v. Alfonso-Larain, 490 U.S. 826, 831 (1989). Thus, if, like here, diversity of citizenship did not exist when the action was commenced, it cannot be created by a later amendment alleging a change of domicile by one of the parties. Id.; see also Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985).

For all of the foregoing reasons, Plaintiffs' motion to amend the complaint to assert diversity jurisdiction and for a jury trial is denied.

SO ORDERED.

Dated:   Brooklyn, New York
         September 14, 2004.

                                              _____
                                              I. Leo Glasser