UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------X

IN THE MATTER OF THE COMPLAINT                    07 Civ. 3840

          of                                       OPINION

DONJON MARINE CO., INC. as owner of Tug
WILLIAM E. for Exoneration from or
Limitation of Liability,

                    Petitioner.

--------------------------------------------X

A P P E A R A N C E S:

          Attorney for Petitioner Donjon Marine Co., Inc.

          RUBIN, FIORELLA & FRIEDMAN LLP
          292 Madison Avenue, 11th Floor
          New York, NY  10017
          By: JAMES E. MERCANTE, Esq.
              MICHAEL E. STERN, Esq.

          Attorneys for Respondent Dennis Kirby

          GORAYEB & ASSOCIATES, P.C.
          100 William Street, Suite 1205
          New York, NY  10038
          By: MARK H. EDWARDS, Esq.

**Sweet, D.J.**

Petitioner Donjon Marine Co., Inc. ("Donjon") has moved under Rule 56, Fed. R. Civ. P., to dismiss the Complaint of Dennis Kirby ("Kirby") on the basis that Kirby's claims are preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., and because Donjon is entitled to exoneration under the Limitation of Liability Act, 46 U.S.C. § 30501 et seq.. Kirby cross-moves to amend the Complaint to add a negligence claim sounding in federal common law and references to 33 U.S.C. §§ 905(b) and 933. Upon the findings and conclusions below, Donjon's motion is granted, Kirby's motion is denied, and the Complaint is dismissed.

## I.   PRIOR PROCEEDINGS

On April 12, 2007, Kirby filed his Complaint against Donjon in the Supreme Court of the State of New York, Bronx County, asserting claims of negligence and violation of New York State Labor Law sections 200, 240(1) and 241(6) and Rule 23 of the Industrial Code of the State of New York. On May 11, 2007, Donjon removed the action to this Court on the basis of diversity and admiralty jurisdiction.

1

On May 16, 2007, Donjon filed a complaint seeking
exoneration from or limitation of liability for Kirby's claims
pursuant to 46 U.S.C. § 30501 et seq..

Donjon's present motion for summary judgment was filed
November 27, 2007, was argued on January 30, 2008, and marked
fully submitted on February 14, 2008.

## II.  **FACTUAL BACKGROUND**

Donjon is the owner of a tugboat called the WILLIAM E.
It is a towing vessel built in 1952 about 85 feet in length.
Donjon hired Caddell Dry Dock ("Caddell") to perform maintenance
and repair work on the tugboat at Caddell's facility, located on
the Kill Van Kull waterway.  On or about January 25, 2007,
Donjon delivered the WILLIAM E into Caddell's care and custody.

On January 31, 2007, Kirby, a Caddell employee, was
standing on a twelve-foot A-frame ladder sandblasting the hull
of the tugboat, when he fell and sustained injuries.  At the
time of the incident, the tugboat was docked in Caddell's dry
dock number 3.  The A-frame ladder was neither on board nor
leaning against the WILLIAM E.

2

Although Kirby has testified that, on the morning of the accident, he "saw two or three Caucasian men" walking in the dry dock who "were not Caddell employees," Donjon was not involved in nor did it supervise Kirby's work. Kirby's supervisor was James Mullusky, another Caddell employee.

Kirby subsequently applied for federal compensation benefits under the LHWCA, and was awarded monetary and medical benefits.

## III. STANDARD OF REVIEW

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

3

"The party seeking summary judgment bears the burden
of establishing that no genuine issue of material fact exists
and that the undisputed facts establish [its] right to judgment
as a matter of law." Rodriguez v. City of New York, 72 F.3d
1051, 1060-61 (2d Cir. 1995). In determining whether a genuine
issue of material fact exists, a court must resolve all
ambiguities and draw all reasonable inferences against the
moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton,
281 F.3d 12, 18 (2d Cir. 2002). However, "[i]n moving for
summary judgment against a party who will bear the ultimate
burden of proof at trial, the movant's burden will be satisfied
if he can point to an absence of evidence to support an
essential element of the nonmoving party's claim." Goenaga v.
March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995). "[T]he non-moving party may not rely simply on
conclusory allegations or speculation to avoid summary judgment,
but instead must offer evidence to show that its version of the
events is not wholly fanciful." Morris v. Lindau, 196 F.3d 102,
109 (2d Cir. 1999) (quotation omitted).

## IV. DISCUSSION

### A. The LHWCA Preempts Kirby's State Law Claims

4

The LHWCA provides longshoremen and other persons
engaged in maritime employment a statutory remedy against their
employers for injuries occurring upon the navigable waters of
the United States.  Congress expressly provided that the LHWCA
is an employee's exclusive remedy against his or her employer.
See 33 U.S.C. § 905(a) ("The liability of an employer prescribed
in section 904 of this title shall be exclusive and in place of
all other liability of such employer to the employee . . . .").
See also Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 366 (5th
Cir. 1995); Levene v. Pintail Enter., Inc., 943 F.2d 528, 531
(5th Cir. 1991) ("The LHWCA absolutely bars suit for all other
acts taken in the capacity as the employer of the injured
worker.").  The LHWCA does not, however, generally preempt state
law tort or statutory remedies against third parties.  On the
contrary, the LHWCA specifically preserves third-party claims:

   If on account of a disability or death for which
   compensation is payable under this chapter the
   person entitled to such compensation determines
   that some person other than the employer or a
   person or persons in his employ is liable in
   damages, he need not elect whether to receive
   such compensation or to recover damages against
   such third person.

33 U.S.C. § 933.

5

Donjon argues that Congress did, however, expressly

preempt state claims against vessel owners in section 905(b),

which provides:

In the event of injury to a person covered under
this chapter caused by the negligence of a
vessel, then such person . . . may bring an
action against such vessel as a third party in
accordance with the provisions of section 933 of
this title, and the employer shall not be liable
to the vessel for such damages directly or
indirectly and any agreements or warranties to
the contrary shall be void. . . .   The remedy
provided in this subsection shall be exclusive of
all other remedies against the vessel except
remedies available under this chapter.

33 U.S.C.A. § 905(b).[1]

Analysis of whether federal law preempts state law

"begin[s] with the language employed by Congress and the

assumption that the ordinary meaning of that language accurately

expresses the legislative purpose." FMC Corp. v. Holliday, 498

U.S. 52, 407 (1990) (quoting Park 'N Fly, Inc. v. Dollar Park

and Fly, Inc., 469 U.S. 189, 194 (1985)).   The language of

section 905(b) plainly and unambiguously preempts all remedies

against vessel owners not provided by the LHWCA: "The remedy

provided in this subsection shall be exclusive of all other

remedies against the vessel except remedies available under this

chapter."   See also Emanuel v. Sheridan Transp. Corp., 779

[1] The LHWCA defines "vessel" to include the vessel's owner. See 33 U.S.C. §
902(21).   Section 905(b) therefore applies to claims against Donjon as well
as the WILLIAM E.

6

N.Y.S.2d 168, 173-74 (App. Div. 2004) (holding that section 905(b) limited plaintiff to a claim of negligence against owner and operator of merchant vessel); H.R. Rep. No. 92-1441, at 12, reprinted in 1972 U.S.C.C.A.N. 4698, 4705 ("[T]he Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.").

The Court of Appeals for the Fifth Circuit recently addressed the impact of section 905(b) on state claims. In McLaurin v. Noble Drilling (U.S.), Inc., plaintiff was injured while working as a scaffold carpenter supporting construction work on a vessel owned by the defendant, when the shell of a pontoon extension fell from a crane and crushed his hand and arm. 529 F.3d 285, 287 (5th Cir. 2008). Plaintiff received medical benefits and disability compensation from his employer under the LHWCA and then sued the vessel owner, alleging negligence claims under Missippi law, general maritime law, and § 905(b) of the LHWCA. The vessel owner argued that plaintiff's state claims were preempted by the last sentence of § 905(b). Id.

The Court of Appeals reversed the district court's holding that § 905(b)'s exclusivity provision preempted plaintiff's state law tort claims against the vessel owner. Id. at 289. The Court of Appeals noted that section 905(b) permits only the assertion of a claim for a maritime tort, and because "[i]njury on navigable waters is the sine qua non of the maritime tort," and plaintiff's injury took place ashore, the injury "did not occur on navigable waters" and "fai[ed] to meet the test for a maritime tort." Id. at 289-291 (second alteration added) (quoting May v. Transworld Drilling Co., 786 F.2d 1261, 1262, 1265 (5th Cir. 1986)). The Court of Appeals also stated, however, that if plaintiff "had been entitled to recover for vessel negligence under § 905(b), then he would not have been able to sue the vessel in tort because '[t]he remedy provided in [§ 905(b)] shall be exclusive of all other remedies against the vessel . . . .'" Id. at 289 (alterations in original) (quoting 33 U.S.C. § 905(b)).

This Court reads McLaurin to say that if an injured employee's tort claims against a vessel owner fall under the federal courts' admiralty jurisdiction, section 905(b) preempts state claims against the vessel owner, and agrees.

Congress did not create a new remedy in section 905(b), but rather preserved an injured workers' right to recover for a vessel owner's negligence under federal maritime law. See Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc., 830 F.2d 1332, 1339 (5th Cir. 1987) ("[S]ection 905(b) eliminates only an injured worker's right to bring actions against third parties based on unseaworthiness, and *preserves his right under prior law to recover for* third party *negligence.*" (emphasis in original) (quoting Parker v. S. La. Contractors, Inc., 537 F.2d 113, 117 (5th Cir. 1976)); Russell v. Atl. & Gulf Stevedores, 625 F.2d 71, 72 (5th Cir. 1980) ("Section 905(b) did not create a new negligence cause of action but merely preserved an injured worker's right to recover damages from third parties in accordance with nonstatutory negligence principles . . . ."); Heim v. City of New York, 442 F. Supp. 35, 38 (E.D.N.Y. 1977) ("[Section 905(b)] simply makes clear that the Compensation Act does not bar an action against a 'vessel' which 'caused' the injury. It does not create an independent cause of action.").

A tort claim qualifies as a "maritime tort" and therefore fall under the federal courts' admiralty jurisdiction "where the wrong (1) took place on navigable waters ('situs') and (2) 'bear[s] a significant relationship to traditional maritime activity' ('status')." Keene Corp. v. United States,

700 F.2d 836, 843 (2d Cir. 1983) (alteration in original)
(quoting Executive Jet Aviation, Inc. v. City of Cleveland, 409
U.S. 249, 268 (1972)).

In McLaurin, plaintiff's tort claim did not satisfy
the situs requirement, and therefore did not fall under the
court's admiralty jurisdiction. As such, section 905(b) did not
apply, and plaintiff could proceed with his state claim.
However, whereas the McLaurin plaintiff's injury took place in a
shipyard, i.e. on dry land, Kirby's injury took place in a
floating dry dock,[2] and injuries that occur in a dry dock have
long been considered to occur on navigable waters. See
Gonsalves v. Morse Dry Dock & Repair Co., 266 U.S. 171, 172
(1924) (holding that maritime tort had been alleged where
employee injured while repairing steamer "resting in a floating
dock at Twenty-Seventh street, Brooklyn"); Perry v. Haines, 191
U.S. 17, 34 (1903) ("[A]s all serious repairs upon the hulls of
vessels are made in dry dock, the proposition that such repairs
are made on land would practically deprive the admiralty courts
of their largest and most important jurisdiction in connection
with repairs."); W. Boat Bldg. Co. v. O'Leary, 198 F.2d 409, 411
(9th Cir. 1952) ("In nautical parlance 'dry dock,' 'floating

[2] The parties refer only to Caddell dock number 3 as a "dry dock," but the
photographs of dock number 3 attached as Exhibit A to the Affidavit of Steve
Kalil, president of Caddell, demonstrate that dock number 3 is in fact a
floating dry dock.

dock' and 'marine railway' are interchangeable terms. Necessarily, all are located on navigable waters . . . ." (quoting Md. Cas. Co. v. Lawson, 101 F.2d 732, 733 (5th Cir. 1939)); Murillo v. Caddell Dry Dock and Repair Co., Inc., 05 Civ. 3202 (NRB), 2005 WL 1790129, at *1-2 (S.D.N.Y. July 27, 2005) (holding that claims of worker injured while repairing ship on a floating dry dock fell within admiralty jurisdiction); Sydney v. United States, 94 Civ. 5956 (JG), 1998 WL 765129, at *2 (E.D.N.Y. June 30, 1998) (same). Kirby's negligence claim therefore meets the situs requirement.

Kirby's claim also meets the status requirement. The status test is met when "the acts or omissions . . . sufficiently relate to traditional maritime activity." Kelly v. United States, 531 F.2d 1144, 1146 (2d Cir. 1976). Ship repair falls within the scope of "traditional maritime activity." See Perry v. Haines, 191 U.S. at 34; Alderman v. Pac. N. Victor, Inc., 95 F.3d 1061, 1065 (11th Cir. 1996) ("[C]onversions, repairs, or maintenance aboard a vessel in navigable water are substantially related to traditional maritime activity.").

Kirby argues that the Court's conclusion is inconsistent with O'Hara v. Weeks Marine, Inc., 294 F.3d 55 (2d Cir. 2002). In O'Hara, the Court of Appeals remanded the

11

district court's summary denial of plaintiff's motion to amend its complaint to add state claims against a vessel owner because the basis for that denial was unclear from the district court's opinion. Id. at 67-68. O'Hara did not address the question of preemption. Kirby's reliance on Cammon v. City of New York, 95 N.Y.2d 583 (N.Y. 2000) is also unavailing. In Cammon, plaintiff, an injured dock builder, sued a third-party defendant under New York Labor Law §§ 200, 240 and 241. The New York Court of Appeals determined that the existence of admiralty jurisdiction did not preempt the state laws. Id. at 587-88. However, because the defendant sued in Cammon was not a vessel owner, Cammon has no bearing on the instant case.

**B.   Amendment of Kirby's Complaint Would Be Futile**

Kirby has failed to adduce facts that would permit a reasonable fact finder to determine that his injury resulted from Donjon's negligence. Kirby's proposed amendments would not cure this deficiency, and his motion to amend is therefore dismissed as futile.

The LHWCA does not define the scope of a vessel owner's duties to harbor workers, but in Scindia Steam Navig. Co. v. De Los Santos, 451 U.S. 156 (1981), the Supreme Court

articulated federal common law standards to guide judicial determinations of liability under subsection 905(b). O'Hara, 294 F.3d at 64-65. "These so-called 'Scindia duties' . . . establish duties of care owed by vessel owners to stevedores and their employees, and to other contractors and non-longshoring harbor workers." Id. at 65. Although it defines a vessel's duty of care in the context of "the triangular relationship of vessel, independent stevedore-employer, and longshoreman employee," Scindia provides the appropriate point of departure for non-longshoring harbor workers as well. Gravatt v. City of New York, 226 F.3d 108, 121-22 (2d Cir. 2000).

## 1.   The Turnover Duty

First, "before turning over the ship or any portion of it . . . the vessel owner must exercise 'ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety.'" Gravatt, 226 F.3d at 120-121 (quoting Scindia, 451 U.S. at 167). "As part of this duty, the vessel owner must also warn the stevedore of hidden dangers that could not be discovered through the exercise of reasonable care." Id. at 121.

13

## 2.   **The Active Control Duty**

Second, "once stevedoring operations have begun, the
vessel will be liable 'if it *actively involves* itself in the
cargo operations and negligently injures a longshoreman.'"   Id.
(emphasis in original) (quoting Scindia, 451 U.S. at 167).
"[E]ven where the vessel does not actively involve itself in the
stevedoring operations, it may be liable 'if it fails to
exercise due care to avoid exposing longshoremen to harm from
hazards they may encounter in areas, or from equipment, under
the *active control of the vessel* during the stevedoring
operation.'"   Id. (emphasis in original) (quoting Scindia, 451
U.S. at 167).

## 3.   **The Duty to Intervene**

Third, "[w]ith respect to obvious dangers in areas
under the principal control of the stevedore, the vessel owner
must intervene if it acquires actual knowledge that (1) a
condition of the vessel or its equipment poses an unreasonable
risk of harm and (2) the stevedore is not exercising reasonable
care to protect its employees from that risk."   Id.

---

Kirby has failed to establish facts from which a reasonable fact-finder could determine that any of these three duties were breached. Kirby does not allege that his injuries resulted from any condition or hidden danger of the ship or its equipment. On the contrary, it is undisputed that Kirby fell from a free-standing A-frame ladder supplied by his employer while on his employer's dry dock. The turnover duty and the duty to intervene are thus not implicated. Nor does Kirby allege that the vessel actively involved itself in the repair operations — at least not the part of the repair operations in which Kirby participated.

**V.    CONCLUSION**

For the above-stated reasons, Donjon's motion is granted, Kirby's motion is denied, and the Complaint is dismissed. Because the Complaint is dismissed on preemption grounds, the Court does not address the question of whether Donjon is entitled to exoneration from or limitation of liability.

**New York, N.Y.**
**July  30  , 2008**

**ROBERT W. SWEET**
**U.S.D.J.**

15